Thomas C. SMITH, Appellant-Petitioner,

v.

Stanley S. RESOR, Secretary of the Army, Appellee-Respondent.

No. 323, Docket 33016.

United States Court of Appeals Second Circuit.

Argued Dec. 18, 1968.

Decided Jan. 13, 1969.

Lipsitz, Green, Fahringer, Roll, Schuller & James; Willard H. Myers, III, Buffalo, N. Y., of counsel, for appellant-petitioner.

Edgar C. NeMoyer, Asst. U. S. Atty., for Western District of New York (Andrew F. Phelan, U. S. Atty., on the brief), for appellee-respondent.

Before KAUFMAN and ANDERSON, Circuit Judges, and McLEAN, District Judge.*

* Of the Southern District of New York, sitting by designation.

IRVING R. KAUFMAN, Circuit Judge:

As in a number of recent cases, we are confronted with the vexatious problem of delineating the proper bounds for judicial review of military decisions affecting persons in the Armed Forces Reserves. Here our task is further complicated because we are asked to decide a question that has been troublesome from the days of Samson to Sergeant Elvis Presley—when is a soldier's hair too long? Thomas C. Smith appeals from a decision rendered October 9, 1968, by Judge Curtin of the Western District of New York, which denied, after a hearing, his petition for habeas corpus.

Smith voluntarily enlisted in the 464th Quartermaster Company, Erie, Pennsylvania, of the United States Army Reserve [hereinafter the Erie Unit] on February 18, 1964, and satisfactorily served the required four and a half months active duty beginning in April 1964. Upon his return to Erie, Smith, his musical acumen and timing evidently sharpened by months of marching in cadence, decided to play the electric guitar on a part time basis as a member of a local musical group calling itself "The Fugitives." To conform to the Fugitives' requirements Smith permitted his hair to grow somewhat longer than those at the more ancient end of the generation gap considered "normal." In addition, Smith was training as an X-ray technician.

After earning his certificate as a technician, Smith and his wife moved to Jamestown, New York in September, 1967. He then decided to devote all his time and talent to music. By November, 1967 he became associated on a full time basis with a Jamestown group calling itself the "Laffin Giraffe." The Laffin Giraffe performed in a style it termed "progessive rock," one of the hallmarks of which, the testimony reveals, is the long hair of its performers. Accordingly, Smith decided that his hair would have to be attuned to the style of the music he was playing, and thus he permitted his hair to grow on and on.

Shortly after his arrival in Jamestown, Smith sought a transfer to the Jamestown Army Reserve unit (A Company Second Battalion, 98th Regiment [hereinafter the Jamestown Unit]). He initiated this process by inquiring on the telephone of the unit's commander, Captain Vandenburg, if there was a place in the unit for him. During the conversation Smith also informed Vandenburg that he was a musician and wore his hair long. In October 1967, Smith appeared in person at the unit's headquarters to sign the required transfer papers and again raised the subject of his now flowing locks with the unit's civilian employee, Mr. Sampson [sic!].

Since the validity of Smith's five "unsatisfactory" ratings for attendance at regular meetings seems to be questioned, it is appropriate that we briefly set forth the facts in this regard. Smith appeared at his first reserve meeting with the Jamestown Unit on January 22, 1968. When Capt. Vandenburg sighted Smith's hair for the first time, he promptly informed him that his appearance was not satisfactory.[1] At the same time he presented Smith with a copy of the Army's Weekly Bulletin 42, dated Oct. 20, 1967[2]

---

1. His hair at this time was approaching shoulder length. And we note that it was agreed at the hearing before Judge Curtin that at all times Smith's hair was clean and neatly combed.

2. Bulletin 42 reads, in relevant part:
 4. WEARING OF BEARDS, LONG HAIR OR MOUSTACHES BY RESERVISTS.
 (a) References:
 (1) Para. 31, AR 600–20
 (2) Para. 34c, AR 140–1

 (b) Cited references provide the following:
 (1) Unit commanders have the authority to order individuals to remove, cut short, or trim, the items in question so that individuals will present a neat and soldierly appearance.
 (2) Unit commanders have the authority to deny an individual credit for attendance at a drill if the individual

144

[hereinafter Bulletin 42], which, *inter alia,* permitted a reservist to wear his hair long if it was necessary to his occupation. Vandenburg informed Smith that a letter from the manager of his group would be sufficient proof of occupational necessity. In any event, because of derisive comments about his hair from other members of the unit, Smith decided to leave before the regular periodic training meeting was officially terminated. Accordingly his performance was marked unsatisfactory and he did not receive credit for attending the meeting.

Smith did not attend his regularly scheduled second unit meeting because weather and transportation problems left him stranded in Detroit after a performance by the Laffin Giraffe. Mrs. Smith, however, notified Captain Vandenburg of this and he agreed to mark this absence as "excused." Smith failed to make up this absence as required by regulations, and it appears that because this meeting was considered "special" he was given two unsatisfactory performance marks.[3]

At the third meeting Smith presented to Mr. Sampson a letter from Scott Saylor, the personal manager of the Laffin Giraffe aggregation, stating that Smith's job required his hair to be worn long because "the hair collectively represents the style of the group and portrays an image to the public." Despite this letter, Captain Vandenburg ordered Smith to go home and have his hair cut,[4] informing him that he must either do so or leave the program. This occasion was marked as Smith's fourth unsatisfactory performance.[5]

Vandenburg made one effort, as he put it at the hearing, to "verify" Mr. Saylor's letter, although nothing on the face of Bulletin 42 required verification. Thus, he made a single telephone call one evening to the radio station which employed Saylor as a disc jockey. He spoke to an unidentified person who told Vandenburg that he did not know either Smith or Saylor. Captain Vandenburg thereupon concluded that since the letter was not "verified" it was not sufficient "proof" to justify Smith's hirsute condition within the scope of Bulletin 42. The captain, however, failed to put the letter in Smith's permanent file (his "201" file). Instead, and contrary to the requirements of Bulletin 42 ("this must be proved by the individual concerned, and made a part of his record."), Vandenburg tucked the letter away in his own desk drawer. Thus, if Smith had attempted to appeal Vandenburg's decision the letter would

---

does not present a neat and soldierly appearance.

(c) Individuals have the right to retain long hair, a beard or moustache if these items do, in fact, contribute to the individual's civilian livelihood. However, this must be proved by the individual concerned, and made a part of his record. If it is established that the individual's livelihood warrants long hair, a beard, or moustache, the unit commander has the right to insist that they be maintained in a neat manner.

(d) Discretion and moderation in issuing orders to remove beards should be exercised by the unit commanders, and each case will be considered and evaluated individually as it is presented. AHCAIG/645.

3. Smith asserts he never received written notice of the need to make up this absence. But Vandenburg orally informed Mrs. Smith of this requirement. It would appear therefore, that the claimed lack of written notice would not be prejudicial, even if it did depart from strict Army regulations.

4. To insure his order was carried out, Capt. Vandenburg sent a sergeant out with Smith to see that he found his way to a barber. Because this occurred on a Sunday, no barber was available and Smith's hair won a reprieve.

5. At this meeting Smith also wore the wrong type of shoes. However, at the hearing before Judge Curtin, Capt. Vandenburg made it clear that the actual basis for Smith's unsatisfactory mark was his long hair.

not have been part of the record on review.

Smith did not attend the next scheduled meeting of the unit, he claims because of Vandenburg's ultimatum that he either have his hair cut or get out of the program. This was his fifth and final unsatisfactory performance. Pursuant to 10 U.S.C. § 673a and the applicable regulations five unsatisfactory performances rendered a reservist liable to be called up for active duty for a period not to exceed a total of twenty-four months.[6] It is not disputed that if Smith's conduct was properly marked unsatisfactory the Army could call him for immediate active duty under § 673a.

In March 1968 Smith and his wife met with Vandenburg. Vandenburg admitted that he advised the Smiths that there was no recourse whatsoever from the impending active duty order. Thus, Smith pursued no other administrative remedies available to him by Army regulations until he was actually ordered to report for a period of one year, six months, and fourteen days active duty. At that time he brought this petition for habeas corpus, seeking his discharge from active duty and restoration to reserve status. The order to report was stayed by this Court pending the outcome of this litigation.

Our decision in this matter requires us to consider several related and complex questions: What actions by the military may this court review? Are the actions of which Smith complains within the scope of that review? If so, and if relief is justified, under what rubric may relief be granted and what form should it take?

■ Our recent decisions make clear that purely discretionary decisions by military officials which are within their valid jurisdiction will not be reviewed by this court. United States ex rel. Schonbrun v. Commanding Officer, Armed Forces, 403 F.2d 371 (2d Cir. 1968). See Fox v. Brown, 402 F.2d 837 (2d Cir. 1968); Winters v. United States, 281 F. Supp. 289 (E.D.N.Y.), aff'd mem., 390 F.2d 879 (2d Cir. 1968).

■■ Bulletin 42 clearly vests in the commanding officer of each unit the discretion to decide if long hair does in fact contribute to the reservist's civilian livelihood for it states that this fact "must be proved by the individual concerned" and that "each case will be considered and evaluated individually as it is presented." Further, the decision as to what constitutes the correct appearance of reservists is, absent extraordinary circumstances not present here, within the jurisdiction of the Army. Accordingly, we decline to review the validity of Captain Vandenburg's decision that Smith must cut his hair to get credit for attendance at drills. Schonbrun v. Commanding Officer, supra.

■ Our reluctance, however, to review discretionary military orders does not imply that any action by the Army, even one violative of its own regulations, is beyond the reach of the courts. See Hammond v. Lenfest, 398 F.2d 705, 710 (2d Cir. 1968). Although the courts have declined to review the merits of decisions made within the area of discretion delegated to administrative agencies they have insisted that where the agencies have laid down their own procedures and regulations, those procedures and regulations cannot be ignored by the agencies themselves even where discretionary decisions are involved.

For example, in United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) the Su-

6. After each unsatisfactory performance, Capt. Vandenburg mailed a notice to Smith by certified mail informing him of the deficiency. All of these were returned unopened, perhaps because there was no one at the Smith residence to sign the necessary receipt at the time they were delivered. Both Mr. and Mrs. Smith were not at home during the day. In March 1968, Vandenburg personally went to Smith's house, presented Smith with the accumulated notices and demanded that he acknowledge their receipt. He explained their contents, but did not give Smith a chance to read the letters themselves. Smith signed as requested.

preme Court declared habeas corpus would lie if the Board of Immigration Appeals did not exercise its independent judgment as required, on a request for suspension of an admittedly valid deportation order since the Board had been influenced in its decision on the suspension by the Attorney General. The Immigration Act had given the Attorney General complete discretion over such suspensions, but he had in turn delegated his authority by valid regulations to the Board. The Court required the procedures specified by the regulation to be carried out, although concededly had the Attorney General not delegated his authority, he could have refused the suspension himself and his decision would not have been reviewable.

■ Again, in Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963) the Supreme Court reversed a conviction for contempt of Congress because the House Un-American Activities Committee had failed to follow its own rules. And in Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) the Court invalidated the discharge of a State Department employee as a security risk because the Secretary of State violated Department regulations in ordering the discharge, although an act of Congress authorized the Secretary "in his absolute discretion" to terminate the employment of any Foreign Service officer when he deemed it necessary. This clear precept, that an agency must follow the regulations it promulgates, has been applied to the Army as well. United States ex rel. Mankiewicz v. Ray, 399 F.2d 900 (2d Cir. 1968); Hamlin v. United States, 391 F.2d 941, 943 (Ct.Cl.

1968); Coleman v. Brucker, 103 U.S.App. D.C. 283, 257 F.2d 661 (1958). In Hammond v. Lenfest, we ultimately returned a sailor's complaint to the Navy so that it might comply with regulations that came to our attention only on a petition for rehearing. 398 F.2d at 718. Accordingly, a federal court may properly examine the decision to call a reservist for active duty in order to determine if the reservist's procedural rights under the applicable statutes and military procedures and regulations were violated in a manner which caused substantial prejudice to the reservist.[7] This does not involve any undue interference with the proper and efficient operation of our military forces because we require only that the Army carry out the procedures and regulations it created itself. A leading scholar on the subject of administrative procedures has noted that judicial review may serve the salutory function of putting "some pressure on the military authorities to watch their own procedures." L. Jaffe, Judicial Control of Administrative Action 369 (1965).

■ The record before us clearly shows that at several crucial stages the Army, through Captain Vandenburg, failed to follow its own procedures and safeguards. At every turn Smith was effectively foreclosed from obtaining review within the military framework of Vandenburg's order. The Army's Bulletin 42 requires the proof submitted by a reservist (Scott Saylor's letter here) to be made part of his official record. Vandenburg, however, deliberately kept Saylor's letter out of Smith's 201 file.[8] Moreover, by telling Smith in substance that he had no further recourse or right

7. Our decision is consistent with Schonbrun, supra, which recognized "the Army's alleged violation of its own regulations * * * might stand differently," Slip Sheet at 3639 although that court did not reach the question since it found that Schonbrun was not prejudiced by any deviation from proper procedure. Moreover, we note that in Schonbrun an entire Reserve unit was called up for active duty because of pressing need while in the case before us, Smith's call-up un-

der the provisions of 10 U.S.C. § 673a, was motivated by his own failures rather than by the Army's manpower needs.

8. The government asserts that Capt. Vandenburg did not consider the letter "proof" within the meaning of Bulletin 42, since it was not "verified." But the very question of whether the letter was or was not adequate "proof" or "verified" could never be determined on review if the letter was not in Smith's permanent file.

to appeal, Vandenburg effectively foreclosed Smith's opportunity to seek appropriate review of the call-up order.

 The right to review an order or decision within the military establishment itself is clear from both Army regulations and statute. Indeed, such a right is essential in any organization which is inevitably hierarchical and hence particularly subject to those prejudices or arbitrary decisions which are part of man's psychological fabric. Thus, 10 U.S.C. § 938 provides that a member of the armed forces who believes himself wronged by his commanding officer may complain to any superior commissioned officer.[9] In addition, all military personnel have the right to register complaints with an Inspector General. See Army Regulation 20-1. There are other routes to re-examination that Smith might have followed.[10] Vandenburg's act in causing Smith to forfeit his right to have the Captain's order reviewed by higher military authorities was as clearly prejudicial as the faulted conduct in *Accardi* or *Hamlin,* supra.

Since we believe Smith is deserving of some relief, the final question we must determine is what form this relief should take. Smith does not seek to be separated from the military completely as in Hammond v. Lenfest, supra, but only to have his call-up delayed while he pursues his course through the military appellate processes. Compare *Schonbrun,* supra with *Hammond.* In *Accardi* the Supreme Court indicated that habeas corpus would be an appropriate means to enforce compliance with regulations. But in *Schonbrun,* we also considered the availability of mandamus as an appropriate remedy under 28 U.S.C. § 1361. See also Miller v. United States, 403 F.2d 77 (2d Cir. 1968); International Products Corp. v. Charles A. Koons & Co., 325 F.2d 403, 407 (2d Cir. 1963).

 In the circumstances present here, we conclude that the most effective relief for Smith, concomitant with the least disruption to the military will be accomplished by remanding this action to the District Court with the suggestion that it treat the action as a mandamus proceeding (pursuant to the mandamus jurisdiction given it by 28 U.S.C. § 1361).[11] See Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930); Byse & Fiocca, § 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action. 81 Harv.L.Rev. 308 (1967).

The district court will then direct the Army to permit Smith fully to avail himself of the procedures the Army has established for review of Captain Vandenburg's decision (unless, of course, the Army decides to withdraw the call-up

---

9. 10 U.S.C. § 938 reads:
 "Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon."

10. The opinion of the court below clearly emphasized that Smith did not follow any of these courses and took this as an indication that Smith was at fault. As we read the uncontroverted sections of the record, however, it is evident that Smith took no action because his commanding officer informed him, with all the weight that the words of a superior officer bear, that there was nothing further he could do. Moreover, by leaving Smith's file incomplete, his superior officer insured that any action Smith did take would be a futile gesture.

11. 28 U.S.C. § 1361 reads:
 "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

order). The stay of his call-up order, already in effect, is to be continued until the course of action set forth above is completed.