UNITED STATES of America ex rel. Gerald R. GASTON, Relator,

v.

Colonel John A. CASSIDY, Commanding Officer, Ft. Hamilton, Brooklyn, New York, Respondent.

No. 68–C–1308.

United States District Court
E. D. New York.
March 4, 1969.

Kunstler & Kunstler, New York City, for relator; Michael J. Kunstler, New York City, of counsel.

Vincent T. McCarthy, U. S. Atty., E. D. New York, for respondent; How-

ard L. Stevens, Asst. U. S. Atty., of counsel.

ZAVATT, Chief Judge.

This is a petition for a writ of habeas corpus by a member of the armed forces who was inducted on December 10, 1965. He contends that he has served more than the twenty-four consecutive months for which he was inducted pursuant to the Selective Service Act, 50 U.S.C. App. § 454(b),[1] and that the extension of that period of service by the Army, pursuant to 10 U.S.C. § 972,[2] is invalid. After a hearing on the allegations of the petition, the petition is denied.

After petitioner was inducted, he was ordered to Fort Knox, Kentucky, where he remained until February 1, 1966, when he was ordered to report to Fort Sill, Oklahoma. While at Fort Sill, and in June of 1966, he was court-martialed for soldiering on the job and urinating from a fire escape and sentenced to three months in the stockade. After serving that sentence he was released back to duty at Fort Sill.

By orders dated September 29, 1966, he was ordered to report on October 4, 1966 to the Overseas Replacement Station at Fort Dix, New Jersey, for as-signment to overseas duty in Germany. The petitioner contends that he obeyed said orders; that he arrived at McGuire Air Force Base, adjoining Fort Dix, on October 4, 1966; that his name was not called at the roll call there that day; that he was taken to Fort Dix the same day and that his name was not called during a roll call there that day; that his name was not called during a roll call at Fort Dix the following day, October 5, 1966. He testified that he mentioned these roll calls to a sergeant (not named or otherwise identified by petitioner) on October 6th; that, later that day, the sergeant returned and asked petitioner for his 201 (personnel) file; that he told the sergeant that he did not have his 201 file, although it is customary for a solider to receive it from his transferor base when ordered to report to another duty station; that the reason he did not have that file was due to the fact that it is not the practice of a transferor station to give the 201 file to a soldier who has been court-martialed. No proof of this alleged practice was offered at the hearing. Petitioner testified further that this unnamed, unidentified sergeant told him to go home (27129 Pennsylvania Avenue, Inkster, Michigan) and to remain there until

---

1. 50 U.S.C. App. § 454(b)

    (b) Length of service; release of individuals accepted into Army National Guard, Air National Guard, and other reserve components

    Each person inducted into the Armed Forces under the provisions of subsection (a) of this section shall serve on active training and service for a period of twenty-four consecutive months, unless sooner released, transferred, or discharged in accordance with procedures prescribed by the Secretary of Defense (or the Secretary of the Treasury with respect to the United States Coast Guard) or as otherwise prescribed by subsection (d) of section 4 of this title [subsection (d) of this section]. The Secretaries of the Army, Navy, and Air Force, with the approval of the Secretary of Defense (and the Secretary of the Treasury with respect to the United States Coast Guard), may provide, by regulations which shall be as nearly uniform as practicable, for the release from training and service in the armed forces prior to serving the periods required by this subsection of individuals who volunteered for and are accepted into organized units of the Army National Guard and Air National Guard and other reserve components.

2. 10 U.S.C. § 972

    § 972. Enlisted members: required to make up time lost

    An enlisted member of an armed force who—

        \*     \*     \*     \*     \*

    (2) is absent from his organization, station, or duty for more than one day without proper authority, as determined by competent authority;

        \*     \*     \*     \*     \*

is liable, after his return to full duty, to serve for a period that, when added to the period that he served before his absence from duty, amounts to the term for which he was enlisted or inducted.

Fort Dix notified him that it had received his 201 file. Petitioner admitted that he did not receive any written authorization to leave the base. Major James Rekowski, the Commanding Officer of the Special Processing Detachment (SPD) testified that only the Commanding Officer of the Overseas Replacement Station has authority to permit one to leave that duty station; that such permission is granted only in written form. Petitioner claims that these are the circumstances under which he left Fort Dix on October 6, 1966, went home to Michigan and absented himself from his duty station for nineteen months, i. e., from October 6, 1966 until he returned to his duty station on May 5, 1968.

He testified that he did not return to Fort Dix until after he had determined, according to his calculations, that his twenty-four months of service had expired, assuming that that period had been properly extended because of his court-martial sentence. When he "returned" to Fort Dix, he demanded his discharge. The following day he received a military police escort by a confinement officer. On May 7, 1968, he was confined in the post stockade where he remained for fifteen days.

It is a responsibility of SPD to receive personnel who have been absent from the Army without leave; to investigate their whereabouts and to determine the number of days of their unauthorized absence. Major Rekowski, the Commanding Officer, directed Sergeant Tucker on May 22, 1968 to investigate petitioner's absence from October 1966 to May 1968. Tucker interviewed petitioner who told him substantially the same story he testified to at the hearing. Tucker checked various Army records, including those at Fort Dix. He found no record of petitioner ever having been at Fort Dix prior to his arrival in May 1968 and no record of petitioner ever having joined his unit in Germany. Based on Tucker's report and in late September 1968, Major Rekowski determined that petitioner had been ab-

sent without leave for 579 days between October 4, 1966 and May 4, 1968 and that the period of petitioner's required military service be extended to July 9, 1969. He directed Sergeant Tucker to note these 579 days of unauthorized absence in petitioner's "reconstructed" 201 file and to note therein that petitioner's ETS (Estimated Termination of Service) was extended to July 9, 1969. These directions were followed. Having observed the petitioner and heard his story as well as the testimony of the Army personnel, I find petitioner's version unworthy of belief. I find that he never reported to Fort Dix from Fort Sill; that he did not report to Fort Dix until May 5, 1968; that he failed to obey the orders he received at Fort Sill to report to Fort Dix; that he did not appear at Fort Dix until he thought that his required period of military service had expired.

Petitioner remained at Fort Dix, New Jersey, until November 11, 1968 when he was transferred to Fort Hancock, New Jersey. Before he was so transferred, he was assigned to duty as a clerk under Sergeant Tucker at SPD, because the unit to which he had been assigned for transfer from Fort Dix to Germany had already departed for Germany. On November 13, 1968, he was transferred from Fort Hancock to Fort Hamilton, Brooklyn, New York, where he is presently stationed. It was after this transfer that he petitioned this court for a writ of habeas corpus.

■ Petitioner does not contend that Major Rekowski's determination to extend his ETS was not supported by the evidence. That determination if made by a competent military authority, would not be reviewable by this court. Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); United States ex rel. Schonbrun v. Commanding Officer, Armed Forces, 403 F.2d 371 (2d Cir. 1968); Fox v. Brown, 402 F.2d 837 (2d Cir. 1968); Winters v. United States, 281 F.Supp. 289 (E.D.N.Y.), aff'd mem., 390 F.2d 879 (2d Cir. 1968). This court does have jurisdiction, however, to review the

question as to whether it was made in excess of military authority or in violation of Army regulations. Smith v. Resor, *supra*.

### Competent Authority

█ Petitioner contends that no one within the Army establishment may extend his twenty-four months of service because neither 10 U.S.C. § 972 (see note 2) nor any Army Regulation defines "competent authority." The court construes "competent authority" in 10 U.S.C. § 972 to mean competent authority under applicable Army Regulations even though they do not specifically define that term *in haec verba.*

Army Regulation, AR 630–10, para. 51 provides:

"Orders assigning absentees returning to military control * * * will be published as prescribed below. * *

*b.* * * · * An absentee who has not been dropped from the rolls of his organization as a deserter prior to his return to military control * * * may be reassigned to an organization other than the unit from which he was absent without leave if—

* * * * * *

(2) The reassignment is accomplished for any reason set forth in paragraph 55."

Since there is no indication that petitioner was dropped from the rolls as a deserter, paragraph 55 is applicable here. That paragraph, in relevant part, provides as follows:

"An absentee or deserter who has been returned to military control will be retained for disposition at the initial installation to which returned * * * when—

· * * * * * *

*e.* There is evidence warranting his trial for a serious offense, proof of which may require testimony of witnesses residing at or near the Army installation of return."

When petitioner "returned" to Fort Dix in May of 1968 there was evidence warranting his trial for a serious offense, namely, absence without leave in violation of 10 U.S.C. § 886.[3] The proof of that violation might have required the testimony of the personnel with whom he allegedly had contact while allegedly at Fort Dix in 1966. It seems clear that Fort Dix was the proper installation to retain jurisdiction over the petitioner and that Fort Dix could assign him to a unit other than the one from which he was absent.

█ Fort Dix Regulation 630–3, para. 3(f) (1) provides that the Commanding Officer of the SPD must

"process and effect disposition of all returned and apprehended absentees who are not assigned to organizations at this station."

When petitioner "returned" to Fort Dix the unit to which he had been assigned for service in Germany had already been sent to Germany. Petitioner, therefore, did not "return" as one assigned to any organization at Fort Dix. Petitioner contends that Major Rekowski had no authority to extend his ETS because petitioner had not been assigned to SPD and, therefore, the Major was not his commanding officer and could not possibly be a "competent authority." It seems to this court, however, that paragraph 3(f) (1) contemplates this very situation. Had petitioner been assigned to a unit present at Fort Dix when he "returned," disposition of petitioner as one who had returned from an absentee status would be made by his Major Unit

---

3. 10 U.S.C. § 886

§ 886. Art. 86. Absence without leave
Any member of the armed forces who, without authority—
    (1) fails to go to his appointed place of duty at the time prescribed;
    (2) goes from that place; or

    (3) absents himself or remains absent from his unit, organization, or place of duty at which he is required to be at the time prescribed;
shall be punished as a court-martial may direct.

Commander pursuant to para. 3(d) (1) [4] of the Fort Dix Regulations. In either event, petitioner claims that neither officer described in paragraphs 3(d) (1) and 3(f) (1) would have the authority to extend his ETS because neither Congress nor any Army Regulation defines "competent authority." He goes so far as to claim that had he been sent to Germany to face the Commanding Officer of the unit to which he was ordered, that Commanding Officer would have no authority to extend his ETS, for the same reason.

After petitioner was released from the stockade in May 1968, he was called before a Courts and Boards officer and handed court-martial charges of having been absent without proper authority from October 4, 1966 to May 6, 1968 in violation of Article 86 of the Uniform Code of Military Justice, 10 U. S.C. § 886. These criminal charges were dropped on July 24, 1968 for lack of evidence. It was the opinion of the Commanding Officer of SPD that petitioner should be court-martialed for having absented himself from the 504th Administrative Company stationed in Germany, to which petitioner had been assigned for transfer thereto via the Overseas Replacement Station. Accordingly, the SPD requested of the 504th Administrative Company a retroactive morning report showing petitioner absent therefrom from October 4, 1966 on. The 504th Administrative Company replied that such a report would be forthcoming. Whereupon, charges were sent to Courts and Boards at Fort Dix. But these charges erroneously charged petitioner with having absented himself from the Overseas Replacement Station. When the 504th Administrative Company failed to forward the report as to petitioner's absence therefrom it was felt that evidence was lacking to establish petitioner's absence from the 504th Administrative Company and, therefore, the charges were withdrawn. This did not mean, however, that there was no evidence that petitioner had not reported to the Overseas Replacement Station. Petitioner contends that, since the court-martial charges were dropped, AR 635–200, para. 1–13(1) deprived Major Rekowski of authority to extend petitioner's ETS. That Regulation, in relevant part, provides:

"No member will be considered for administrative discharge because of conduct which has been the subject of judicial proceedings resulting in an acquittal or action having the effect thereof * * *."

That Regulation, however, deals only with discharges and has no relevance to the extension of an ETS. The decision to extend an ETS is an administrative determination and is not to be controlled by any prior disposition of court-martial charges. United States ex rel. Parsley v. Moses, 138 F.Supp. 799, 803–04 (D. N.J.1956); AR 630–10, para. 70.[5]

4. REGULATION
NUMBER 630–3                                         8 May 1968
PERSONNEL ABSENCES
PROCESSING AND DISPOSITION OF ABSENTEES
AND DESERTERS
 *     *     *     *     *     *     *     *
3. RESPONSIBILITIES:
 *     *     *     *     *     * .    *     *
  d. *Major Unit Commanders:*
  (1) Effect disposition of assigned or attached enlisted personnel who have returned from an absentee status, have been apprehended, or are in the hands of civil authorities.

———◆———

5. AR 630–10, para. 70
   70. Excusing unauthorized absence. Whether a member is absent from duty for administrative purposes is a matter for administrative determination. The results of a court-martial or military jus-

## Failure to Notify

■ Petitioner contends that the Army, in violation of its own Regulations, failed to give him adequate notice that he was considered to be absent without proper authority. AR 630–10, para. 5 provides that, if a soldier has been absent without proper authority for ten consecutive days, his unit commander shall mail a letter immediately to his nearest relative, advising that the soldier is absent without leave; that continued absence may result in serious consequences and that the absentee should return at once. No such letter was mailed. Absent a showing of prejudice to petitioner, failure to comply with this Army Regulation does not warrant the granting of the instant petition. United States ex rel. Schonbrun v. Commanding Officer, Armed Forces, *supra*, 403 F.2d at 375. Cf. United States v. Sturgis, 342 F.2d 328, 331 (3d Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965); Winters v. United States, *supra*, 281 F.Supp. at 299–300. Since the court finds that petitioner did not report to Fort Dix in 1966, as required by the orders issued at Fort Sill, the petitioner knew that he was absent without proper authority and that his absence might result in serious consequences.

## Denial of a Hearing

Petitioner contends that he was not afforded, and under Army Regulations could not be afforded, a meaningful opportunity to oppose the extension of his ETS. Under 10 U.S.C. § 938,[6] a soldier who is aggrieved by a decision of his commanding officer may apply to that officer for redress. If redress is refused, he may complain to a superior officer who must forward the complaint, for appropriate action, to the officer exercising general court-martial jurisdiction over said commanding officer.

After the court-martial charges against petitioner were dropped on July 24, 1968, he received orders, dated July 26, 1968, to report to the Overseas Replacement Station on August 6, 1968 for assignment to duty in Germany. Petitioner testified that, on August 6, 1968, he told a personnel officer (neither named nor otherwise identified) that it was his opinion that he was entitled to an immediate discharge and that he also complained to this unnamed officer that the orders erroneously stated his ETS to be December 1968; that this officer referred petitioner to his commanding officer who 'arranged an appointment for him with the Inspector General; that he saw the Inspector General on August 11, 1968; that the Inspector General told him that his ETS had been extended by the post custodian of records and arranged an appointment for him with a Captain Ballister of the Adjutant General Section; that Captain Ballister referred him to a Lieutenant Connor who told him that it was improper to extend his ETS without first consulting Washington, D. C.; that Lieutenant Connor filed a petition for an excused absence in his behalf; that his orders to report for duty in Germany were revoked pending this application; that, on an unspecified date, the application was returned to Lieutenant Connor for failure to route it through proper channels. Petitioner testified, further, that, while at

---

tice determination is immaterial with respect to administrative determination.

6. 10 U.S.C. § 938
   § 938. Art. 138. Complaints of wrongs
   Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

Fort Hamilton, he continued to inquire about his ETS through a Lieutenant Olsen from whom he received no information; that after he was transferred to Fort Hamilton, he spoke over the telephone with Lieutenant Connor's co-worker, Sergeant Smith, who told him that his application had been dropped because he, petitioner, had agreed to accept Article 15 punishment (nonjudicial punishment by a commanding officer under 10 U.S.C. § 815);[7] that he was never offered nor did he ever accept Article 15 punishment. There is no indication in petitioner's 201 file that such punishment was ever inflicted upon him. It should be noted that, while Sergeant Tucker was investigating petitioner's absence, he told petitioner that he had a right under Army Regulations to seek to have his unauthorized absence excused but that petitioner never consulted Tucker about such an application.

██ In Smith v. Resor, *supra*, the court held that erroneous advice by petitioner's commanding officer, to the effect that petitioner could not appeal from said officer's decision, violated petitioner's rights under section 938. Under the *Smith* rationale, it might be argued that the erroneous advice of the Inspector General, to the effect that petitioner's ETS had been extended by the post custodian of records, violated petitioner's rights to make his initial complaint to Major Rekowski. But the court believes that *Smith* is distinguishable on its facts. In the instant case, petitioner also knew that Sergeant Tucker of SPD, the unit to which petitioner was assigned, was investigating his absences. Thus, unlike the petitioner in Smith, petitioner herein had reason to believe that the decision to extend his ETS was to be made by Major Rekowski and petitioner could have applied to Major Rekowski in order to oppose the extension of his ETS. It might be argued further, under *Smith*, that the erroneous action of Lieutenant Connor, in sending petitioner's application through the wrong channels, violated petitioner's rights under section 938 to have Major Rekowski's decision reviewed by an officer exercising general court-martial jurisdiction over said Major. On this record, however, petitioner has not sustained his burden of proving that Lieutenant Connor ever took such erroneous action. Lieutenant Connor was not produced as a witness. Nor were Captain Ballister, Lieutenant Olsen or Sergeant Smith produced as witnesses. Petitioner was the only witness who testified to Lieutenant Connor's action and it is unclear whether he had personal knowledge of the return of the alleged application to Lieutenant Connor. Furthermore, no documentary evidence tending to prove that Lieutenant Connor ever made such an application or that such an application was returned without action thereon was ever introduced.

---

7. 10 U.S.C. § 815
  § 815. Art. 15. Commanding officer's non-judicial punishment
  (a) Under such regulations as the President may prescribe, any commanding officer may, in addition to or in lieu of admonition or reprimand, impose one of the following disciplinary punishments for minor offenses without the intervention of a court-martial—
  \*  \*  \*  \*  \*
  (2) upon other military personnel of his command—
    (A) withholding of privileges for not more than two consecutive weeks;
    (B) restriction to certain specified limits, with or without suspension from duty, for not more than two consecutive weeks;
    (C) extra duties for not more than two consecutive weeks, and not more than two hours per day, holidays included;
    (D) reduction to next inferior grade, if the grade from which demoted was established by the command or an equivalent or lower command;
    (E) if imposed upon a person attached to or embarked in a vessel, confinement for not more than seven consecutive days; or
    (F) if imposed upon a person attached to or embarked in a vessel, confinement on bread and water or diminished rations for not more than three consecutive days.

The foregoing constitutes the court's findings of fact and conclusions of law.

The petition for a writ of habeas corpus is denied.[8]

This is an order.

8. At the close of petitioner's case, the respondent moved for a dismissal for failure to exhaust military remedies. The court reserved decision on this motion. Since the petition has been denied on the merits, there is no need to rule on this motion. Whether the exhaustion doctrine applies where, as here, it is claimed that military authorities acted in excess of their jurisdiction, is a question that may soon be decided by the Supreme Court of the United States. See Noyd v. Bonds, 394 U.S. ——, 89 S.Ct. 478, 21 L.Ed.2d 554 (1969). Opinion of Douglas, J.).