Leonard **HORNSTEIN** et al., Plaintiffs,

v.

Melvin **LAIRD** et al., Defendants.

No. 70 Civ. 4422.

United States District Court,
S. D. New York.

May 14, 1971.

Kunstler, Kunstler & Hyman, New York City, for plaintiffs, by Steven J. Hyman, New York City.

Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., for defendants; Daniel H. Murphy, II, Asst. U. S. Atty., of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiffs, who are in their sixth year of service in five Ready Reserve units of the 77th United States Army Reserve

Command, move for an order, pursuant to Rule 65, F.R.Civ.P., granting a preliminary injunction against defendants, ordering and directing them to transfer plaintiffs to the Standby Reserve, on the grounds that the continued participation of plaintiffs in the Ready Reserve is contrary to 10 U.S.C. § 269(e) (4) [1] and Army Regulation 135–91 ¶ 17b.[2]

On the occasion of the postal strike in March 1970, the President declared a state of national emergency and directed the Secretary of Defense to take appropriate action pursuant to 10 U.S.C. § 673. There followed written orders handed on down the line specifying certain units, not including plaintiffs', which were called to active duty for service in the emergency. However, Major General Kaine, Commanding General of the 77th USARCOM, received official notification by telephone on the evening of March 23, 1970 from Lieutenant General Rich, Deputy Commanding General of CONARC, Washington, D.C., that the New York units of the 77th USARCOM were being activated the next morning for duty in connection with the postal strike. Major General Kaine inquired as to which units, and Lieutenant General Rich informed him that they covered two pages in small type but that "for all intents and purposes, all units in the metropolitan area were being mobilized, with the exception of the 4th JAG Detachment." Major General Kaine then proceeded to put the mobilization plan into effect. Unit commanders were directed to have their units assemble at their home stations at 0645 hours and to stand by for further orders. The following broadcast was issued on radio and television:

"All US Army Reserve personnel assigned to New York City units of the 77th US Army Reserve Command, except the 4th JAG Detachment, are directed to report to their respective USAR centers in fatigue uniform at 0645 hours, tomorrow, 24 March 1970."

The plaintiffs, as members of the 77th U.S. Army Reserve Command, reported to their respective centers at the time specified, in fatigue uniform. They remained at the centers for varying periods of not more than five hours, when they were dismissed and went home.

It is plaintiffs' contention that they were called up for active duty and are accordingly entitled to transfer to the Standby Reserve pursuant to 10 U.S.C. § 269(e) (4) and AR 135–91 ¶ 17b. since they have served on active duty (other than for training) in the Armed Forces for an aggregate of less than five years, but satisfactorily participated in an accredited training program in the Ready Reserve for a period which, when added to their period of active duty (other than training), totals at least five years. Plaintiffs say that other members of the Ready Reserve whose units were called to active duty at the time of the postal strike have been allowed to transfer to the Standby Reserve under Section 269(e) (4) and AR 135–91 ¶ 17b. while

1. "Except in time of war or of national emergency declared by Congress, a Reserve who is not on active duty, or who is on active duty for training, shall, upon his request, be transferred to the Standby Reserve for the rest of his term of service, if—

* * * * *

(4) he served on active duty (other than for training) in the armed forces for an aggregate of less than five years, but satisfactorily participated, as determined by the Secretary concerned, in an accredited training program in the Ready Reserve for a period which, when added to his period of active duty (other than for training), totals at least five years * * *."

2. " * * * Except for those who are discharged due to expiration of term of military service or other authorized reasons, upon completion of active duty, members will be transferred as follows:

* * * * *

b. Those who have completed a total of five but less than 6 years' Ready Reserve and active Federal service will be transferred to the Standby Reserve."

their applications for transfer have been denied.

Defendants contend that plaintiffs were not ordered to active duty since they were not included in the units which were specified in the written orders, and that the order of Major General Kaine implemented over radio and television was an "alert" and not a call to active duty. Defendants concede that if plaintiffs were ordered to active duty, they are entitled to be transferred to the Standby Reserve. In support of their contention that plaintiffs were merely alerted, and not called to active duty, affidavits of the officers concerned have been filed in opposition to the motion, but it is noted that all of these affidavits were made subsequent to the filing of the original complaint in this action on October 9, 1970.

The parties are in agreement that the relevant Army Regulation is AR 135–300 entitled "Mobilization of Army National Guard of the United States and Army Reserve Units." In his affidavit, Major General Kaine states that Lieutenant General Rich informed him that for all intents and purposes, all units in the metropolitan area were being *mobilized* with the exception of the 4th JAG Detachment, and that upon completion of his telephone call with Lieutenant General Rich, he directed that the *mobilization* plan be put into effect. "Mobilization" is defined in the regulation as "the act of ordering * * * USAR units * * * to active duty under the authority contained in Title 10, United States Code, sections 672 and 673 * * *." (AR 135–300 ¶1–3m.) While defendants say that plaintiffs' units were alerted and not called to active duty, and that an alert is the step taken prior to the order to active duty, citing 10 U.S.C. § 672(e), that section merely provides that a reasonable time shall be allowed between the date when a Reservist ordered to active duty is alerted for that duty and the date when he is required to enter upon that duty, and that unless the Secretary determines otherwise, the period shall be at least 30 days. In the context of the emergency occasioned by the postal strike and the fact that units were activated overnight, it is clear that the Secretary determined otherwise. The regulation defines an "alert" as "any form of *communication* used by Headquarters, Department of the Army or other competent authority to first notify * * * USAR unit commanders that orders to active duty are pending for the unit." (AR 135–300 ¶1–3b.) (Emphasis added). In the case of plaintiffs' units, they were provided with the effective date of entry on active duty simultaneously with the alert in accordance with AR 135–300 ¶1–3b. The broadcast authorized by Major General Kaine did not ask the Reservists to stand by for further orders—it directed them to report in uniform to their respective USAR centers—and under the circumstances then prevailing, it seems clear that plaintiffs' units were not merely alerted, but were ordered to active duty in connection with the postal strike then in progress. Plaintiffs entered upon active duty when they reported to their respective USAR centers in uniform at the time specified.

In view of the general orders which followed the President's declaration of a national emergency, it cannot be said that Major General Kaine went beyond the scope of his authority in ordering that the mobilization plan be put into effect and in authorizing the broadcast which directed the units to report to their USAR centers the following morning. Both Lieutenant General Rich and Major General Kaine were "competent authority" to order the units and their members to active duty in the time of national emergency declared by the President (AR 135–300 ¶1–3c. and ¶2–16a.), and competent authority may "issue oral or written orders direct to unit commanders concerned, bringing units and members thereof to active duty" (AR 135–300 ¶2–16e.).

It appears that plaintiffs have exhausted all administrative remedies available to them. Plaintiffs, individually and through their attorneys, have

filed requests for transfer to the Standby Reserve, which requests have been denied.

Therefore, on the record, a preliminary injunction should issue, enjoining the defendants from denying plaintiffs their right to transfer to the Standby Reserve pursuant to 10 U.S.C. § 269(e)(4) and AR 135–91 ¶17b. There would be no purpose in holding a hearing since sufficient evidence is contained in the record concerning the mobilization of plaintiffs' units.

Unless an injunction is granted, plaintiffs who are in their sixth year of service in the Reserve will be required to attend either weekly or monthly meetings and the annual 2-week training session which would not be required if they were in the Standby Reserve. Further, unless transferred to the Standby Reserve, plaintiffs will be subject to possible call-up to active duty. Accordingly, plaintiffs have demonstrated that they will suffer irreparable harm unless an injunction is issued.

■ Furthermore, the issuance of an injunction will not interfere with the Army's exercise of discretion since § 269 provides that a Reservist who comes within subparagraph (e) "shall, upon his request, be transferred to the Standby Reserve for the rest of his term of service," and " 'shall' is used in an imperative sense" in Title 10, U.S.C. (10 U.S.C. § 101(28)). Likewise, AR 135–91 ¶17b. provides that those who have completed a total of five but less than six years in the Ready Reserve and active Federal service *will* be transferred to the Standby Reserve. Therefore, no discretion is vested in the Army. This court has jurisdiction since defendants have failed to follow the statute and the Army's own regulation. Smith v. Resor, 406 F.2d 141 (2d Cir. 1969).

This court reaches the conclusion that the defendants should be enjoined from denying plaintiffs their right to transfer to the Standby Reserve most reluctantly. There is no obvious reason why a Reservist in the plaintiffs' position who is called to his USAR center to cool his heels for four or five hours and then dismissed should, *ipso facto*, be entitled to transfer to the Standby Reserve. However, since this court finds that plaintiffs' units were ordered to active duty and that plaintiffs entered upon active duty when they reported at 0645 hours on March 24, 1971 as directed, § 269(e)(4) and AR 135–91 ¶17b. mandate that plaintiffs be transferred to the Standby Reserve. While this court believes that the active duty requirement of § 269(e)(4) should be pinned to a more realistic foundation, any such revision must be left to the Congress.

Plaintiffs' motion is granted, and a preliminary injunction will issue enjoining defendants from denying plaintiffs their right to transfer to the Standby Reserve pursuant to 10 U.S.C. § 269(e)(4) and AR 135–91 ¶17b.

Settle order on notice.