**20**

John Earl BAUGH, Petitioner,

v.

Major General George B. BENNETT, Adjutant General for the State of Idaho, and Lt. General S. R. Larsen, Commanding General of the Sixth U. S. Army, Respondents.

Civ. No. 1-71-2.

United States District Court,
D. Idaho.

June 10, 1971.

Michael Donnelly, Caldwell, Idaho, for petitioner.

Don McClenahan, McClenahan & Greenfield, Winston H. Churchill, Wallis, Churchill & Gabbert, Boise, Idaho, for respondent.

Sidney E. Smith, U. S. Atty., Boise, Idaho, for Lt. Gen. S. R. Larsen.

MEMORANDUM DECISION
and ORDER

McNICHOLS, Chief Judge.

This is a habeas corpus proceeding initiated by the petitioner, John Earl Baugh (hereinafter Baugh), a member of the Idaho Army National Guard. He has been involuntarily ordered to active duty with the Army upon a determination that he has not satisfactorily performed his duties under his contract with the Guard. This action is brought against his superior military officers under the provisions of 28 U.S.C. § 2241, et seq., alleging the illegality of the purported orders. He contends that he is thusly being unlawfully restrained from his liberty.

Respondents question the jurisdiction of the Court and deny that the order to active duty is in any manner improper. The Court has heretofore determined that it has jurisdiction. By stipulation the parties have submitted the controversy on the records and files of the military action and the court proceedings.

A resume of the facts leading up to the application for the writ discloses the following somewhat novel situation. Petitioner Baugh originally enlisted in the National Guard in February, 1965, for a six-year hitch, to expire February 1, 1971. As part of his enlistment contract he was required to satisfactorily perform his assigned duties with a local Guard unit. In the event his service was not performed in a satisfactory manner, it was provided that he could be ordered to active duty for a maximum of twenty-four months (10 U.S.C. § 673(a)). From all that appears in the record, Baugh performed satisfactorily for several years up to the fall or winter of the year 1969.

In the civil side of his life, petitioner is making an effort to support his wife and child as an entertainer, a folksinger. He seemingly feels that this avocation requires that he wear his hair in a longer style than is compatible with the uniform and appearance regulations adopted in 1969 by his local Guard unit. When the length of his hair and mustache became the subject of disapproval by his superiors he attempted to resolve the problem by wearing, during Guard drills, a short length wig under which his longer locks were painstakingly tucked. This deception was soon detected and after a series of conferences and trimmings of the wig, the use of the same at drills was disapproved and credit for attendance at drills where the wig was worn was denied. Consequently Baugh's attendance account was debited to the end that his performance of duty reached the unsatisfactory level and his immediate commanding officer so certified.

An attorney friend of Baugh contacted the Idaho Adjutant General, respondent Major General George B. Bennett, and persuaded him to appoint a board of National Guard personnel to examine Baugh's natural hair (and mustache) to determine whether or not it met the requirements of the regulations. Respondent Bennett put it to Baugh that: (1) if the board found his natural hirsute adornment to be acceptable, the past absences would be excused, but (2) if not, Baugh would be ordered to active duty, unless (3) he had his hair cut to an acceptable length, in which case the absences would be excused. Needless to say, the local board so constituted held the hair to be too long. The next day Baugh appeared before respondent Bennett wearing the short wig and permitting the General to conclude that he had suffered a haircut. He was thereupon advised that he was in conformance and that he was reinstated in a satisfactory performance status and his past absences excused.

Petitioner promptly communicated this ruling to his immediate seniors indicating the General's order of absolution. These "doubting Thomases" made inquiry up the chain of command to the end that petitioner's perfidy was disclosed to respondent Bennett who confronted Baugh and drew from him an admission of his deception. The order of reinstatement was thereupon rescinded and Bennett reported Baugh to respondent Lt. General S. R. Larsen for failure of satisfactory performance of duties and requested orders calling Baugh to involuntary active duty.

A different attorney perfected an appeal on Baugh's behalf. The thrust of this appeal, based on the Second Circuit case of Smith v. Resor (2nd Cir. 1969) 406 F.2d 141, was that consideration should be given to the hair style requirements of guardsmen in their civil life occupation and that the commanding officer in this case had ignored this side of the question. The foregoing set of facts was disclosed to a duly impanelled appeal board at the United States Army Components Personnel Center, Fort Benjamin Harrison, Indiana, this being for all intents and purposes a board of final determination. The appeal board, against the recommendation of the forwarding endorsement of each lower authority, approved the appeal from involuntary active duty. Respondent Bennett requested reconsideration by the appeal board to no avail. That board predicated its approval of petitioner's appeal on the

ground that there existed "reasonable doubt he was accorded equitable consideration". This holding was amplified by the language used in rejecting respondent Bennett's petition for reconsideration wherein the appeal board said:

"  *  *  *

"3. In the instant case, there is no doubt that PVT Baugh was properly charged with the MUTAs of 7–8 February and 7–8 March 1970. However the action of curtailing the involuntary call on 23 March 1970, was in fact, a legal reinstatement; thereby nullifying the 8 properly charged drills. The fact that a lie was subsequently discovered does not alter the legal point that competent authority dismissed the case as evidenced by the statement in the second paragraph, third page, inclosure 8."

The appeal board, in the same document from which the above quote is taken, indicated that it followed a policy of avoiding opportunities for adverse court decisions, saying: "judicially indefensible cases are best resolved without litigation."

Unfortunately, and I use the word advisedly, the only notice of the appeal board action given to Baugh was communicated by a letter dated August 11, 1970 from his commanding officer informing him that his appeal had received favorable action, that his orders to active duty were cancelled, and that he was reinstated in good standing in his unit. The letter then proceeded to call his attention to his duty to attend drills, advised him of the next scheduled drill, and enclosed a copy of the regulations prescribing the uniform and appearance standards required of the Idaho Army National Guard. Had this letter advised petitioner that the board had decided his appeal on a procedural question and had not reached the substantive issue presented on appeal, i. e. the balancing of civil life requirements with military rules, then Baugh could not have rationally believed that his use of the wig had been vindicated.

Petitioner, upon receipt of the said letter, talked with his commanding officer by telephone. It is disputed as to the tenor of this conversation. Petitioner says he was told he could not attend drill wearing his wig. Captain Hiner, the commanding officer, recalls the conversation but denies ever telling Baugh he could not attend drill wearing a wig. It is clear, however, that Captain Hiner did not intend to allow Baugh to obtain credit for any drills during a time he was wearing a wig. Baugh attended no further drill and was charged with eight unexcused absences in August and September of 1970. Five such absences were considered unsatisfactory performance. When four had been accumulated, petitioner was duly informed of this fact and warned of the consequences of additional absences. When eight had accrued he was advised by letter that he was being reported as unsatisfactory in performance and that orders to active duty were being requested. On October 13, 1970, Baugh was notified by the office of respondent Bennett that active duty orders would be forthcoming and informing him of his right to again appeal from active duty orders. On October 28, 1970, petitioner filed his notice of appeal in the following language:

"I appeal any action indicated by the communication of October 13, received by me October 17, from the office of the Adjutant General through CW4 Glen D. Kump, Military Personnel Officer."

Once again all of the officials in the chain of command duly forwarded the notice of appeal recommending disapproval. Each forwarder indicated that Baugh had neither denied the charges made, nor given any excuse or justification for his failure to attend drill. On this basis the appeal board at Fort Benjamin Harrison disapproved the appeal thusly:

"  *  *  *

"5. Findings: Having carefully considered the facts and documents submitted by PVT John E. Baugh, 518–50–3569, incidental to his delay appeal application the Board finds:

that the documentation submitted fails to qualify the applicant for mitigation or relief from his involuntary call to active duty.

"a. A detailed analysis of this case reveals that the administrative factors required to support an involuntary call to active duty for unsatisfactory participation have been consummated. This review included examination of the petitioner's Military Personnel Records Jacket (DA Form 201); 28 October 1970 letter of appeal from call to active duty; and several forwarding command indorsements.

"b. Petitioner's appeal did not state any facts which justify cancellation of his active duty orders."

Petitioner was duly notified that his appeal had been unsuccessful and ultimately formal orders to active duty, effective January 14, 1971, were served on him. He then sought the aid of congressional officials who in turn urged some further consideration on the part of the respondent Bennett. On January 1, 1970, Bennett appointed a Colonel Fawcett to investigate and evaluate any new evidence or information in Baugh's case which might bear on his orders to involuntary active duty. Petitioner secured present counsel who represented him at a formal hearing before Colonel Fawcett.

The thrust of the new matters raised at this hearing fall into these categories: (1) for the first time Baugh formally contended that his commanding officer had advised him by telephone, on or about August 12, 1970, after the successful appeal, that he could not attend drill wearing a wig. Baugh claimed he believed that the purport of his successful appeal was an approval for wearing the wig over his long natural hair and that his commanding officer was refusing to abide by this decision; (2) a family hardship was claimed, and (3) contentions of technical errors in the order to active duty were advanced.

Colonel Fawcett entered formal findings and recommendations, the gist of his report being that no grounds existed for rescinding of the orders to active duty.

No further intra-military relief being provided in the regulations, petitioner has brought the instant action to test the constitutionality of the currently effective orders directing him to report for active duty at Fort Lewis, Washington. Pending the outcome of this proceeding the respondents have been restrained from effecting the challenged orders.

It would be useful at this juncture to point out that the authority of the National Guard to establish rules and regulations controlling the acceptable length of hair to be worn by a guardsman on duty is not here in question. Nor is it seriously contended by the petitioner that such regulations permit the use of the wig herein involved. The key issue before me, and the only issue presenting any arguable merit, may be thusly stated:

"Did the army deprive the petitioner of his right to due process of law by failing to afford him the required opportunity to appeal the determination of his commanding officer that his performance of duty was unsatisfactory?"

The record clearly shows that Baugh did file a notice of appeal on the second occasion and that the same was duly processed in what appears on the surface at least to be in accordance with the published regulations. Obviously his appeal was given little consideration in view of the fact that no specific grounds were alleged and no excuse for missing drills was advanced.

My attention has not been directed to any regulation requiring that any counseling or assistance be afforded a guardsman in exercising his right to appeal from orders to active duty for unsatisfactory performance of Reserve duties. The results here indicate how idle the right of appeal is when exercised without such help.

What determination the Appeal Board might have arrived at had the notice of

appeal set up the potentially existing excuses for missed drills is of course only subject to conjecture. It now appears that the following grounds for appeal might well have been advanced:

1. That Baugh reasonably believed that as a result of the first appeal the wearing of his wig to drill had been approved by the Appeal Board.

2. That according to Baugh, his commanding officer refused to abide the ruling of the Appeal Board and wrongfully refused to allow him to attend drills wearing the wig.

3. That, since the import of the first appeal had not been communicated, Baugh acted in good faith in believing that he had a good excuse for remaining away from drill under all of the circumstances.

4. That a family hardship situation had developed which might have militated against active duty.

In order for the Appeal Board to effectively carry out its stated function: "to weigh all information, facts, circumstances and documentation incidental to the processing of an individual for involuntary active duty" it would seem that these contentions of the individual would be vitally important. Without his side of the story, the appeal process was a sham.

Responsibility for stating the alleged grounds of appeal of course lay initially with Baugh. No doubt this matter could be disposed of by holding that he had the opportunity and obligation to state the reasons why he felt aggrieved as a part of the notice of appeal which he filed. Having failed to do so, it could be argued, he cannot now complain that the same were not considered.

▉▉ I am unable, however, to accept this easy out. When Army regulations provide for an appeal by a Reservist from orders to involuntary active duty, these regulations must be held to require that a meaningful appeal be afforded. Anything less deprives that individual of the due process of law which is guaranteed to all by the Constitution of the United States. When the Reservist files an appeal notice which on its face is insufficient to raise any issue, some further duty is placed on his superiors to provide means to point out the inadequacies of the notice and counsel him on the necessity to present grounds, if indeed any exist, to support the appeal. Any other course will lead inevitably to subverting the purposes of the appeal process provided for by regulations. This case presents a prime example of the utter futility of an appeal where this duty to provide some assistance in the preparation of appeals is not met.

▉ The record makes it clear that the petitioner, Baugh, was denied due process of law in that he was not afforded the meaningful appeal to which he was entitled by Army regulations. On this state of the record some remedial action must be taken by the Court.

Petitioner, by his application for writ of habeas corpus, has asked to be discharged from the custody of the armed forces. The effect of such an order would be a court ordered military discharge. Petitioner has shown no entitlement to such relief. The Court may, however, treat the cause as though one for mandamus and direct the respondents to take certain steps to correct the deprivation of petitioner's rights. 28 U.S.C. § 1361; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 50 S.Ct. 320, 74 L.Ed. 809 (1930); Smith v. Resor (2nd Cir. 1969) 406 F.2d 141; Schatten v. United States (6th Cir. 1969) 419 F.2d 187.

The respondents are therefore ordered and directed to forthwith take all proper steps to afford the petitioner, John Earl Baugh, an opportunity to re-file a proper notice of appeal from the current decision to order him to involuntary active duty, and to duly process such appeal, de novo, through appropriate channels. In the event such notice of appeal be filed, after reasonable opportunity provided, and the same be not supported by alleged

reasons or grounds for appeal, then respondents will provide some means of counseling or assistance to the petitioner to the end that those grounds or reasons which he may express are included in the appellate record. Pending the outcome of the appeal, respondents will not cause the petitioner to be removed from the territorial jurisdiction of this Court. In the event no appeal is filed by the petitioner within the time provided by regulations, and after notice of that right has been given him as so provided, then this order will have no further force or effect.

It is so ordered.