Harold **RADERMAN**, Appellant,

v.

Major General **J. W. KAINE**, Command-
ing General 77th United States Army
Reserve Command, and Captain Wil-
liam Stanners, Commanding Officer,
146th General Support Company, De-
fendant.

No. 594, Docket 33445.

United States Court of Appeals
Second Circuit.

Submitted March 26, 1969.

Decided June 5, 1969.

William M. Kunstler, New York City
(Kunstler & Kunstler, New York City),
for appellant.

Howard L. Stevens, Asst. U. S. Atty.,
Brooklyn, N. Y. (Vincent T. McCarthy,
U. S. Atty., for the Eastern District of
New York, Brooklyn, N. Y.), for appel-
lee.

Before WATERMAN, MOORE and
FRIENDLY, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff-appellant, Harold Raderman
instituted this action against defendants-

appellees, Major General J. W. Kaine, Commanding General, 77th United States Army Reserve Command and Captain William Stanners, Commanding Officer, 146th General Support Company, whereby he sought permanently to enjoin them from enforcing certain statutes and a directive issued as of July 1, 1968 which might result in plaintiff being certified to his Selective Service Board for immediate induction into the Armed Services. He also requested the convocation of a three-judge court to rule upon alleged constitutional issues. The defendants moved for an order dismissing the complaint or alternatively for summary judgment in their favor. The district court granted the motion for summary judgment, dismissing the complaint and plaintiff appeals from that order.

*The Facts*

The facts are to be found in the complaint and affidavits to which correspondence between plaintiff and the Army, plaintiff's employer and the Army and an inter-departmental memorandum are annexed. The controversy is based upon the length of plaintiff's hair, particularly during the period from July 15, 1968 to the present time.

Some six years ago plaintiff enlisted in the Army and, instead of the two-year period of continuous service, elected to enlist in the Reserves for six years, six months of which were to be active duty, the balance by regular attendance at drills (two days a month) and by two weeks' annual summer camp training. He finished his active duty assignment on February 20, 1964, and was eventually assigned to the 146th General Support Company. Shortly thereafter plaintiff obtained employment with a theatrical agency and in 1965 became an agent for "rock and roll" bands. Because of this position plaintiff claims that he "has worn his hair longer than conventional length" (Compl. par. 8). Until July 1, 1968 an Army directive gave individuals "the right to retain long hair" if it contributed "to the individual's civilian livlihood." (Weekly Bulletin 42, October 20, 1967).

Subsequently this directive was superseded by the directive of July 1, 1968 which "prohibited reservists from wearing their hair as long as that then and still being worn by plaintiff." (Compl. par. 11). During his summer training period in July 1968 plaintiff was ordered to conform to the new directive and refused to comply. The penalty was a fine of some $20 but an additional and more serious consequence was the denial of credit for attendance at drills. Again on August 10, 1968 plaintiff was advised by defendant Stanners that unless he wore his hair at a conventional length he would not receive credit for attendance and that because of such defaults he would be inducted into military service for approximately fifteen months' active duty. Thereafter plaintiff wrote to Vice-President Humphrey and Congressman Ryan. These letters and others were unproductive of results favorable to plaintiff and on September 12, 1968 plaintiff was advised by a Major General of the Army that "Army regulations require that haircuts be well groomed, cut short or medium length, and trimmed at all times. Exceptions will not be made to this policy." A subsequent letter from plaintiff's employer to the Major General indicated that if plaintiff cut his hair his value to them "would be sharply curtailed."

At this time plaintiff had accumulated thirteen unexcused absences from drills. Some absences he disputes but if his absences, resulting from no credit because of his unkempt appearance, are counted, they exceed the allowable number.

The district court relied upon this court's recent decision in Smith v. Resor, 406 F.2d 141, in which the court said: "Further, the decision as to what constitutes the correct appearance of reservists is, absent extraordinary circumstances not present here, within the jurisdiction of the Army."

Plaintiff summons to his aid seven of the first ten amendments to the Constitution, probably on the theory that with seven pegs on the board his broadly

hurled arguments might attach themselves to one. But such reliance points to the fallacy of plaintiff's position. If he asks: Does being in the Army curtail or suspend certain Constitutional rights?, the answer is unqualifiedly "yes". Of necessity, he is forced to surrender many important rights. He arises unwillingly at an unreasonable hour at the sound of a bugle unreasonably loud. From that moment on, his freedom of choice and will ceases to exist. He acts at the command of some person—not a representative of his own choice—who gives commands to him which he does not like to obey. He is assigned to a squad and forced to associate with companions not of his selection and frequently the chores which he may be ordered to perform are of a most menial nature. Yet the armed services, their officers and their manner of discipline do serve an essential function in safeguarding the country. The need for discipline, with the attendant impairment of certain rights, is an important factor in fully discharging that duty.

In listing all his constitutional impairments plaintiff forgets that it is the Constitution which authorizes the creation of an Army. Plaintiff's and his fellow citizens' duly elected representatives enacted the draft legislation. He knew that he could fulfill his military obligations by enlisting in the Army for two or for six years. It is the same Army—only the period of service differs. Plaintiff concedes that, had he elected the two-year period, he would have had to conform to Army Regulations including the length of his hair. However, plaintiff chose the six-year enlistment undoubtedly because it offered certain inducements. Not the least of these inducements was probably the ability to carry on various civilian activities and to avoid the raucous sounds of daily bugles and the regimented day thereafter—or even possibly foreign service. But these civilian activities were permissive, they were not constitutional rights. Plaintiff was still in the Army

and subject to Army discipline. He was not a free agent. Nor could he ignore his Army enlistment. For six years he, by his own choice, imposed restrictions upon his activities and his appearance. For various reasons, the Army decided (not subject to federal court review unless the courts take over the functions of the General Staff) that the equivalent of two years' intensive service was six months, followed by five and one-half years of bi-weekly drills and summer camp training.

Plaintiff now asks that an exception as to appearance be made in his case. The Army has advised him that such an exception cannot be made. Such a decision is within the exclusive jurisdiction of the Army.

How have the courts handled such requests for special treatment under allegedly special circumstances?

First it is necessary to set out the statutory and regulatory framework underlying the present action. Section 673a of Title 10 authorizes the President to order to active duty any member of the Ready Reserve who is "not participating satisfactorily" in his reserve duties. Members of reserve units are exempt from induction under 50 U.S.C. App. § 456 only "so long as they continue to be such members and *satisfactorily participate* in scheduled drills and training periods as prescribed by the Secretary of Defense * * *." No definition of "satisfactory participation" is contained in either statute. [Emphasis added]

Army Regulations No. 135–91, issued pursuant to the above authority, prescribes the "policies, procedures and responsibilities pertaining to satisfactory completion of the Ready Reserve service obligation." Members "are required to participate satisfactorily in paid drill units * * * for the full period of their Ready Reserve obligation." "Satisfactory participation" is defined in the Regulations as "Attendance at all scheduled unit training assemblies * * * unless excused by proper authority." A member is not satisfactorily participating "unless he is in the prescribed uni-

form, *presents a neat and soldierly appearance,* and performs his assigned duties in a satisfactory manner as determined by the unit commander," Army Regulations 135–91(5) (d) (2) [Emphasis added]. Failure to properly participate leads to loss of attendance credit and to an unexcused absence. The nature of the relief appellant seeks in this lawsuit is to have this Court become the arbiter of what constitutes "a neat and soldierly appearance," within the meaning of the Army regulations, inform the Army that his hair is the proper length for a reservist and then order the Army not to call him up for active duty.

This Court has repeatedly refused to grant relief in similar situations where men have been called to active duty because of unsatisfactory participation in training functions. Fox v. Brown, 402 F.2d 837 (2d Cir. 1968), cert. denied, 393 U.S. 1114, 89 S.Ct. 1007, 22 L.Ed.2d 120 (March 24, 1969); Winters v. United States, 281 F.Supp. 289 (E.D.N.Y.,1968), aff'd 390 F.2d 879 (2d Cir. 1968); United States v. Lonstein, 370 F.2d 318 (2d Cir. 1966). See also United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968). The rationale has been that determination of whether a reservist has fully discharged his duties was, absent extraordinary circumstances, for the Army and not for the Courts.

Smith v. Resor, *supra,* cited by plaintiff, is not to the contrary, although the facts are somewhat similar to the present case. There a reservist was called to active duty because of five "unsatisfactory" ratings for attendance at required meetings. See Army Regulations 135–91. He had received most of these ratings because his hair was too long. However, this Court in reversing the District Court's denial of relief remanded because the Army had failed to follow its own regulations. Weekly Bulletin 42, referred to above, was then in effect and Smith's employer had written the required letter indicating that longer hair was necessary to his employment but his commanding officer refused to allow him to wear his hair long. More importantly, this letter was not placed in his file, as is required, but was tucked in the commanding officer's desk, thereby rendering any in-service appeal fruitless. The Court, remanding for such an appeal, emphasized that what constituted proper or correct appearance was "within the jurisdiction of the Army," and declined to review the validity of the decision that Smith must cut his hair to get credit for attendance at drills. This is precisely the discretionary determination which plaintiff now asks this Court to review.

Discretionary power by its very nature is the power to choose among competing considerations. Although rarely is discretion absolute—even the broad discretion of governmental personnel officers in hiring and firing is limited where certain bases of action would violate the Constitution—this Court, because of the frequent need for expedition in call-up orders has expressed serious doubt how far this principle should apply to such matters. United States ex rel. Schonbrun, *supra,* 403 F.2d at 374. In Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), the Supreme Court declined to review a military call-up order where an abuse of discretion may very well have been involved. The Court refused to review despite the claimed discriminatory character of the orders.

█ At the time of the present action, Raderman had not yet been formally ordered to report for active duty, and in anticipation of such order and to bar its issuance he brought this suit. He claims that his case is distinguishable from other cases cited above, since it is "an affirmative lawsuit *before an induction order*" has been received, rather than a habeas application after an induction order. [Emphasis added.] But the procedural posture of such an action is irrelevant to the merits. If it were otherwise, a reservist, who could reach the courthouse steps first, by commencing an action before a call-up order issued, presumably would have greater sub-

**1106**

stantive rights than one who was not as agile.

Plaintiff claims that compliance with his commanding officer's order to trim his hair would have seriously impaired his ability to earn his living. Therefore, he alleges that the military's action has denied him "liberty" and "property" without due process of law, citing a quotation from Chief Justice Warren in Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 13 L.Ed.2d 1377 (1959), that "the alleged liberty is petitioner's freedom to practice his chosen profession" * * * "free from unreasonable governmental interference." The *Greene* case involved the question of whether an engineer, who for years had had security clearance and had worked on many defense projects, could be denied such clearance on the basis of confidential informant testimony without the opportunity to confront and cross-examine his accuser. The Court held that he could not be. The case is clearly distinguishable on its facts; it did not involve a reservist and Chief Justice Warren dictum must be viewed in the context of the factual situation of that case.

■■ The problem with a reservist, such as Raderman, is that he is neither a civilian nor a full-time soldier. In effect he must live in two worlds, one military and one civilian and attempt to satisfy the requirements of both. As in this case, the demands of each may conflict and, while the result may appear harsh, he made the choice some time ago to join a reserve unit. Concomitant with that decision was the knowledge that he would be subject to Army rules and regulations concerning his appearance for six years. Certainly what constitutes a neat and soldierly appearance for a reservist within such regulations is within the discretion of the military. There is no claim here that plaintiff was treated any differently than any other reservist; in fact, he was advised by a Major General of the Army that "Exceptions will not be made to this policy." Throughout the ages the appearance of the military has changed radically. Pic-

tures of Visigoths and our own Civil War soldiers illustrate these changes. But past practices afford no criteria for the present. At any rate, a court is in no position to make that kind of judgment. In the present case there is clearly no action by the military which goes far beyond any rational exercise of discretion. Relief must therefore be denied.

We have reviewed the other claims raised by the plaintiff and conclude that they are without merit.

The judgment below is affirmed.