426 F.2d 908
 Frank GIANATASIO, Jr., Plaintiff-Appellant,
v.
First Lieutenant Eamonn M. WHYTE, Commanding Officer,
Company 'A' 242nd Engineer Battalion (C) (A) Connarng,
Stratford, Connecticut, Major General E. Donald Walsh,
Adjutant General for the State of Connecticut, Lieutenant
General Jonathan O. Seaman, Commanding General, First United
States Army, Fort George G. Meade, Maryland, and Major
General Winston P. Wilson, Chief National Guard Bureau,
Washington, D.C., Defendants-Respondents.
 No. 768, Docket 34585.
 United States Court of Appeals, Second Circuit.
 Argued May 8, 1970.
Decided June 2, 1970.
 
 Lawrence P. Weisman, Bridgeport, Conn., for appellant.
 Richard P. Crane, Jr., Asst. U.S. Atty., Stewart H. Jones, U.S. Atty., District of Connecticut, for defendants-respondents.
 Before LUMBARD, Chief Judge, WATERMAN, Circuit Judge, and JAMESON, District Judge.*
 WATERMAN, Circuit Judge:
 
 
 1
 The appellant, Frank Gianatasio, Jr., enlisted in the Connecticut Army National Guard on July 14, 1965, Bastille Day. This fortuitous connection with one of the world's great national holidays commemorating the overthrow of despotic power by non-conformists was of no moment for three and one half years here, until, symbolically, appellant's commanding officer in January and March 1969 concluded on eleven drill occasions when appellant was physically present and ready to participate in drills that appellant's long hair caused him to be guilty of 'unsatisfactory participation' in unit drills. It appeared to the citing officer, defendant First Lt. Eamonn M. Whyte, that because Army Regulation 135-91 5(d)(2) requires National Guard members to present a 'neat appearance' to the world around them appellant's non-conforming hairdo should be equated with 'unsatisfactory participation.'
 
 
 2
 Gianatasio insisted that he did have a really 'neat' haircut by any but army standards and argued that long hair was essential to his civilian work. His employer, the manager of the Shoe Bazaar in Westport, Connecticut, wrote the Guard that '* * * since it is now fashionable for men to have long hair and since Frank is now a salesman of fashionable shoes and clothing he could not possibly sway someone toward a look, that with a short haircut, he would appear for all purposes, not to understand.' The manager added, 'If there are any questions please do not hesitate to call.'
 
 
 3
 First Lieutenant Whyte was not impressed with this reasoning. He did not call or acknowledge the letter but instead, in answer to a later letter, wrote to appellant's employer on March 24, 1969. He stated that 'Due to circumstances involved with this man he is now pending action to be inducted into the Army of the United States for a period of two years. This individual is not a conformist as far as the army way of life as he will not apply himself with his obligation to the United States Government.'
 
 
 4
 Appellant appeared before the State Adjutant General on April 24, 1969, and as a result was given a further opportunity to comply with the 'neat appearance' regulation. However, Gianatasio's hair was judged unsatisfactory by Lieutenant Whyte on two further occasions after this date, and on July 1, 1969 plaintiff was ordered to report on August 7 for active duty in the Army for a period of 24 months less time already served on active duty. At this point we are constrained to note that the Guard seems not to have considered that appellant's hair impeded him in the performance of military duties, but only that his hair length did not conform to aesthetic requirements. Gianatasio's appeal from this order within the National Guard failed. Thereupon he instituted this action in the United States District Court for the District of Connecticut for a declaratory judgment that Army Regulation 135-91 and procedures followed pursuant thereto violated the United States Constitution, sought the convening of a statutory three-judge district court, and injunctions reinstating him in the National Guard and preventing his activation. He also claimed damages of $25,000. The defendants moved for summary judgment in their favor. The lower court denied plaintiff's application for a three-judge court and for a preliminary injunction and granted defendants' motion for summary judgment. Gianatasio appeals.
 
 
 5
 Appellant argues that his order to report for active duty is an arbitrary impairment of his constitutional rights in violation of the due process clauses of the Fifth and Fourteenth Amendments to the Constitution. In his enlistment contract with the National Guard, Gianatasio agreed that 'If in any year I fail to perform satisfactorily any of the requirements set forth above, I can be ordered to perform active duty for training for a maximum of 45 days or be reported to Selective Service for immediate induction.' This contract language was authorized by 50 U.S.C.App. 456(c)(2)(D), which stated that 'any person enlisted or appointed after October 4, 1961, in the Ready Reserve of any reserve component of the Armed Forces * * * who fails to serve satisfactorily during his obligated period of service * * * may be selected for training and service and inducted into the armed force of which such reserve component is a part, prior to the selection and induction of other persons liable therefor.'
 
 
 6
 Instead of reporting Gianatasio to the Selective Service System for induction, however, the Guard ordered him directly into active duty pursuant to 10 U.S.C. 673a,[1] enacted subsequent to appellant's enlistment. Appellant maintains that, even assuming arguendo that he was indeed guilty of 'unsatisfactory participation,' this retroactive application violates his contractual right to be inducted, if he may be inducted at all, through the Selective Service System. This violation, he contends, is highly prejudicial to him for he claims he might have qualified for a deferment if he had been processed through Selective Service, a possibility foreclosed to him by the order to report directly for active duty.
 
 
 7
 We disagree that appellant would have had an opportunity to qualify for a deferment if he had been processed through his draft board, and we therefore find that the retroactive application of Section 673a did not harm appellant in any tangible way. At the time of his enlistment 32 C.F.R. 1631.8 provided, pursuant to 50 U.S.C. App. 456(c)(2)(D), that 'any registrant enlisted * * * in the Ready Reserve of any reserve component of the Armed Forces * * * who fails to serve satisfactorily during his obligated period of service as a member of such Ready Reserve * * * as certified by the respective Armed Force, shall be ordered to report for induction by the local board regardless of the class in which he is classified and without changing his classification.' We have already held applying this clear language, that 'the Local Board's responsibility was solely ministerial, to bring into active service a soldier who had already enlisted and whose reserve status had been terminated; the Regulations as to the right to a hearing with respect to a classification or refusal to reopen one were thus inapplicable.' United States v. Lonstein, 370 F.2d 318, 320 (2 Cir. 1966). Inasmuch as Gianatasio, if he were to be processed through Selective Service, would have no right to reclassification, we do not see what right he lost by being activated through a procedure which bypassed the local draft board.
 
 
 8
 Appellant contends that this interpretation of Section 456 and our holding in Lonstein are now invalid because of Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970) and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). We do not agree. The Supreme Court there held that Congress had not granted the President and the Selective Service System the right to remove a civilian registrant from a deferred classification to punish him for acts meriting criminal punishment under other provisions of federal law. Appellant's situation is quite different from the situations present in Gutknecht and in Breen, for Congress specifically provided that induction could follow unsatisfactory performance in the National Guard, and Gianatasio agreed to this congressional provision when he signed his National Guard contract. Appellant does not challenge the fact that this contract is valid and binding. Gutknecht and Breen were civilian draft registrants, not National Guardsmen.
 
 
 9
 Second, appellant argues that the army regulation implementing 10 U.S.C. 673a contradicts regulations promulgated by the Secretary of Defense, specifically 32 C.F.R. 101.3-101.5. These regulations, however, do not in any way purport to provide exclusive induction procedures which would bar direct orders to report to active duty authorized by 10 U.S.C. 673a. The thrust of appellant's argument, if there is one, eludes us at this point. Moreover, the Government points out that these regulations were supplanted on January 9, 1969 by a new Department of Justice Directive 1215.13, 34 F.R. 130, which specifically authorizes resort to 10 U.S.C. 673a.
 
 
 10
 Third, appellant argues that his order to active duty constitutes the imposition of a punishment by the Government without the protection of constitutionally required procedural rights, such as counsel, cross-examination, compulsory process, an impartial tribunal, public trial, and others. Appellant cites Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) and United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965). Appellant overlooks the fact, however, that he agreed in his enlistment contract to immediate induction into the active service should he 'fail to participate satisfactorily' in the National Guard. Even assuming that this contract agreement did not waive any procedural rights which might otherwise have existed without it, Gianatasio does not intimate that he has actually been injured by the lack of any of these procedures. He does not here contest the fact that his hair is longer than National Guard standards permit, nor does he allege that he would have made such a contention to the Guard in hearings which were not made available to him or were not fairly conducted. We have already held that the military has wide discretion in regulating hair length. See Raderman v. Kaine, 411 F.2d 1102 (2 Cir. 1969). Therefore, inasmuch as Gianatasio has failed to show or even allege that he might have substantive rights to protect, we fail to see how any hypothetical deprivation of procedural rights can harm him.
 
 
 11
 Appellant's final argument apparently seeks to have us overrule Raderman v. Kaine, supra, on grounds that the Guard's 'neat appearance' rules unjustly deprive him of his right to a livelihood in civilian life. We decline so to rule and note in the words of the court below '* * * that the plaintiff could have worn an appropriate wig, thereby complying with military requirements and satisfying the appearance needs of his job.'
 
 
 12
 Affirmed.
 
 
 
 *
 Of the Southern District of New York sitting by designation
 
 
 [1]
 Section 673a reads:
 673a. Ready Reserve: members not assigned to, or participating satisfactorily in, units.
 (a) Notwithstanding any other provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who--
 (1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;
 (2) has not fulfilled his statutory reserve obligations; and
 (3) has not served on active duty for a total of 24 months.
 (b) A member who is ordered to active duty under this section may be required to serve on active duty until his total service on active duty equals 24 months. If his enlistment or other period of military service would expire before he has served the required period under this section, it may be extended until he has served the required period.
 (c) To achieve fair treatment among members of the Ready Reserve who are being considered for active duty under this section, appropriate consideration shall be given to--
 (1) family responsibilities; and
 (2) employment necessary to maintain the national health, safety, or interest.