**Antonio E. CRUZ–MATOS, Plaintiff,**

v.

**Melvin R. LAIRD, Secretary of Defense of the United States; Stanley Resor, Secretary of the Army of the United States; the Commander, United States Army Reserve Components Personnel Center, Fort Benjamin Harrison, Indiana; the Commander, Headquarters Third U. S. Army, Fort McPherson, Georgia; the Commander, Headquarters, Third U. S. Army-Puerto Rico; and the Adjutant General, Puerto Rico Army Reserve National Guard, Defendants.**

**Civ. No. 144–71.**

United States District Court, D. Puerto Rico, San Juan Division.

April 23, 1971.

**1326**

Olaguibeet A Lopez-Pacheco, Hato Rey, P. R., for plaintiff.

Jose A. Quiles, Asst. U. S. Atty., San Juan, P. R., for defendants.

## ORDER

FERNANDEZ-BADILLO, District Judge.

Petitioner, Antonio E. Cruz-Matos, has applied for a permanent injunction directing to stay his orders to active duty in the United States Army which were issued when petitioner failed to participate satisfactorily with his reserve obligation. This action is predicated on the proposition that petitioner has been deprived of substantial rights, including his right to appeal the order to active duty, in violation of appropriate military law and regulations.

The relevant facts leading to petitioner's induction may be summarized as follows:

Antonio E. Cruz-Matos voluntarily enlisted in the Puerto Rico Army National Guard for a period of 6 years on July 30, 1967. During the summer encampment of the Puerto Rico Army National Guard, conducted in July 1970, petitioner requested permission to absent himself from the last day of the encampment. Permission was granted by the National Guard authorities. After the summer encampment, petitioner did not attend any other drill exercise with his National Guard unit. In fact, petitioner was absent without excuse from thirteen (13) drills.[1]

After each absence, petitioner was sent a letter by his unit commander in which he was informed the number of absences he had accrued; that these absences affected his military and civilian records since these could cause him to be called to active military duty for a period no longer than twenty-four (24) months; and that National Guard regulations allowed him fourteen (14) days from the date of the absence to obtain medical certificates or affidavits which justified the reason for his absence. In these letters, he was also notified of the next drill assemblies. These letters were sent to petitioner by certified mail with request for return receipt.

Petitioner was also visited on several occasions by his unit first sergeant and by unit sergeants who admonished him

[1]. Petitioner's periods of unauthorized absences from drills with his National Guard Unit are the following:
 (a) July 19, 1970 (2 drill assemblies)
 (b) August 2, 1970 (2 drill assemblies)
 (c) August 16, 1970 (2 drill assemblies)
 (d) August 30, 1970 (2 drill assemblies)
 (e) September 12, 1970 (1 drill assembly)
 (f) September 13, 1970 (2 drill assemblies)
 (g) September 20, 1970 (2 drill assemblies)

to attend the National Guard drills and who inquired as to the reasons for his absences. Petitioner did not heed to their advice.

On September 20, 1970, petitioner was recommended by his National Guard Unit to be ordered to active military duty for failure to comply with his reserve obligation.

On October 31, 1970, petitioner received a letter from the Office of the Adjutant General, Puerto Rico National Guard, in which he was informed that in accordance with Army Regulation No. 135–91, he had the right to appeal the request for orders to active duty and such appeal must be submitted no later than fifteen (15) days from receipt of the letter.

On the evening of October 31, 1970, petitioner visited the home of Sergeant Rafael Sierra, First Sergeant of his National Guard Unit, and informed him about the letter from the Puerto Rico National Guard. He requested and obtained information as to the procedure to follow in order to petition for a hardship discharge.

Sometime after the fifteen (15) days period to appeal to the orders to active duty, petitioner visited the Puerto Rico National Guard Headquarters and talked with Major M. Ascar March, Special Assistant to the Adjutant General. Petitioner inquired again on the procedure to follow in order to obtain a hardship discharge.

By Letter Orders Number A–12–924, dated December 23, 1970, from Headquarters, Third United States Army, Fort McPherson, Georgia 30330, petitioner was ordered to enter active duty on January 25, 1971.[2] Under the terms of these Orders, petitioner was ordered to active duty with the United States Army for a period of seventeen months and 28 days. Petitioner was discharged from the Puerto Rico National Guard by Special Order Number 3, dated January 12, 1971, from Headquarters, Puerto Rico National Guard, Office of the Adjutant General, San Juan, Puerto Rico 00904. The effective date of this Order was January 24, 1971, and from the next day on, i. e., January 25, 1971, petitioner became a member of the United States Army.

On January 21, 1971, petitioner, through his attorney, submitted a document entitled "Appeal from the Request for Order to Active Duty" to the Adjutant General of the Puerto Rico National Guard for his consideration. On January 25, 1971, Major Cesar G. Cordero, Assistant Military Personnel Officer, Headquarters, Puerto Rico National Guard, replied to petitioner that no action would be taken on the appeal since petitioner was no longer a member of the Guard.

Based on these facts, petitioner, on February 22, 1971, filed his complaint for permanent injunction and a temporary restraining order was issued by this Court.

After having heard the evidence presented in this case and the arguments of attorneys for both parties, it is clear that petitioner was given ample opportunities to excuse his unauthorized absences. In fact, his National Guard Unit was more than lenient in permitting petitioner to accrue thirteen unexcused absences before calling him to active military service. By Army regulations, petitioner could have been called to active duty when he accumulated five unexcused absences.[3]

---

2. A copy of Letter Orders Number A–12–924, dated December 23, 1970, from Headquarters, Third United States Army, Fort McPherson, Georgia 30330, was admitted into evidence as Exhibit 5 for Plaintiff. By request of petitioner, these Letter Orders were amended by Letter Orders Number M–01–603, dated 25 January 1971, from Headquarters Third United States Army, Fort McPherson, Georgia 30330, giving petitioner 30 days extension to report to his unit.

3. Paragraph 12, Army Regulation No. 135–91 establishes:

"A member fails to participate satisfactorily when he accrues in any 1-

It is also clear to this Court that petitioner was given adequate notification of his call to active duty and of his right to appeal the request for orders to active duty under Army Regulation No. 135–91, which provides in paragraph 14b:

"(1) After personally verifying the circumstances in each case and determining that the administrative requirements of this regulation have been complied with, the State adjutant general or his assistant, if so deputized, will identify to the appropriate area commander * * * those ARNGUS members who are to be ordered to active duty as Reserves of the Army. Simultaneously with the request for orders for active duty being submitted to the area commander, the State adjutant general will inform the individual member of the ARNG of his right to appeal this order to active duty and that any such appeal must be submitted no later than 15 days from the receipt of the right to appeal letter. * * *.

"(2) Members so identified will be discharged from their ARNG status by the State adjutant general, effective the day prior to the date member is scheduled to report to active duty. * * *."

Paragraph 14g.1 of the same regulation, also provides for the right to appeal the request for order to active duty:

"g.1 *Right to appeal.* Simultaneously with the request for assignment instructions the Reservist will be informed of his right to appeal this order to active duty and that any such appeal must be submitted no later than 15 days from the receipt of the right to appeal letter."

---

year period a total of five or more unexcusable absences from scheduled unit training assemblies * * *."

4. Petitioner contends that his visit to Major M. Ascar March at the National Guard Headquarters was in a way an appeal to the request for orders. This

This Army regulation is in accord with 10 U.S.C., Section 673a

"Section 673a. *Ready Reserve members not assigned to, or participating satisfactorily in, units.*

"(a) Notwithstanding any other provisions of law the President may order to active duty any member of the Ready Reserve of an Armed force who—

"(1) is not assigned to, or participating atisfactorily in, a unit of the Ready Reserves; * * *."

In this respect, it is significant that petitioner ignored the fifteen days period authorized by Army regulations to appeal the request for order to active duty, and instead decided to inquire on ways to obtain a hardship discharge from the military. The "appeal" was submitted by petitioner with a delay of more than two months, that is, on January 21, 1971.[4]

A review of the jurisprudence involving similar cases discloses that the scope of review of the court is very limited, as illustrated by Krill v. Bauer, D.C., 314 F. Supp. 965 (1970):

" * * * generally speaking, it is true that the courts must be careful not to impinge upon those matters legitimately within the discretion of the military. * * *."

See Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842; Fox v. Brown, 404 F.2d 837 (2d Cir. 1968).

In Byrne v. Resor, 3 Cir., 412 F.2d 774 (1969), which was an action to compel defendants to rescind the military orders which called plaintiff up from the Army Reserve to active duty, the court stated:

" * * * it is not our function to review the discretionary judgment of a military officer made within the scope

---

contention was rebutted by the oral and documentary evidence submitted in the hearing. Assuming arguendo, that his visit was sufficient to constitute an appeal (something that this Court does not consider necessary to decide), it is inescapable the fact that it was after the fifteen days period given to appeal.

of his authority. See Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842; Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); U. S. ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2 Cir. 1968)."

See also, Raderman v. Kaine, 2 Cir., 411 F.2d 1102 (1969), which states at p. 1105:

" * * * the rationale has been that determination of whether a reservist has fully discharged his duties was, absent extraordinary circumstances, for the Army and not for the Courts. * * *."

Applying all the preceding principles of law to the instant case, the defendants have at all times complied with Army Regulation No. 135–91.

The petitioner also argues that some of his procedural rights were violated. The same allegations were raised in Gianatasio v. Whyte, 2 Cir., 426 F.2d 908 (1970), where the petitioner argued a similar situation:

" * * * that his order to active duty constitute the imposition of a punishment by the Government without the protection of constitutionally required procedural rights, such as counsel, cross-examination, compulsory process, an impartial tribunal, public trial, and others. * * * Appellant overlooks the fact, however, that he agreed in his enlistment contract to immediate induction into the active service should he 'fail to participate satisfactorily' in the National Guard. * * *."

In light of the facts of this case and the above cited jurisprudence, petitioner's call to involuntary active duty was in compliance with Army regulations, and defendants acted under valid law.

Therefore, petitioner's application for permanent injunction must be and is hereby Denied. Temporary restraining order issued on February 23, 1971 and subsequently extended, is hereby Set Aside.

It Is So Ordered.