652 F.2d 316
 Frances E. DILLARD, Appellant,
v.
Harold BROWN, Secretary of Defense of the United States;
Major General Wilfred C. Menard, Jr., Adjutant General of
the New Jersey Army National Guard; Major General Leverne E.
Weber, Adjutant General of the Army National Guard of the
United States; the United States of America; the State of
New Jersey, Appellees.
 No. 80-2331.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6) Feb. 26, 1981.
Decided June 15, 1981.
 
 David B. Avigdor, Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, a professional corp., Roseland, N. J., Lampf, Lipkind, Prupis & Petgrow, West Orange, N. J., for appellant.
 William W. Robertson, U. S. Atty., Maryanne Desmond, Anne C. Singer, Asst. U. S. Attys., Newark, N. J., for appellee.
 Submitted Under Third Circuit Rule 12(6) Feb. 26, 1981.
 Before WEIS and GARTH, Circuit Judges, and MILLER,* Judge.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether an action brought by a female enlistee who was discharged from the New Jersey National Guard pursuant to a regulation forbidding the enlistment of single parents with minor, dependent children, presents a justiciable claim. A secondary question is presented whether summary judgment could properly be granted if we were to hold Ms. Dillard's claim to be justiciable. Contrary to the district court's determination, we hold that Dillard's constitutional challenge is justiciable. We also hold that summary judgment on the present record was improperly granted. Accordingly, we reverse.
 
 I.
 
 2
 Frances Dillard enlisted in the District of Columbia Army National Guard in April, 1977. At that time, Dillard allegedly was instructed by a recruiter not to disclose on her application that she, an unmarried woman, had a minor, dependent child. In a later application Dillard stated that she had one dependent, but did not specify that the dependent was a minor child.
 
 
 3
 On processing, Dillard's file revealed that she had enlisted in the Guard in violation of an Army regulation. Army Regulation, Rule F, Table 2-1 ("AR 601-210"). This regulation provides in relevant part:
 
 
 4
 (2) An applicant without a spouse and with one or more dependents under 18 years of age is disqualified, except as provided in (3) and (4) below. No waiver is authorized.
 
 
 5
 (3) A divorced applicant may be processed for enlistment when the child or children have been placed in the custody of the other parent by court order and the applicant is not required to provide child support. No waiver is required.
 
 
 6
 (4) A divorced applicant may be processed for dependency waiver when the child or children have been placed in the custody of the other parent by court order and the applicant is required to provide child support.
 
 
 7
 Dillard was therefore honorably discharged on December 13, 1977, as an "erroneous" enlistee.
 
 
 8
 For a period of time in 1972 to 1973, prior to Dillard's enlistment, single parents with no more than one minor dependent had been allowed to enlist in the Guard. For a year following this period, such parents could still enlist, but needed an approved waiver. However, on July 15, 1974, enlistment eligibility for single parents with minor dependents was ended. The Army's Director of Military Personnel Management, General Williams, explained that single parent soldiers presented the Army with many problems particularly in regard to extra-duty requirements, assignment flexibility and morale because of their parental responsibilities.[1]
 
 
 9
 Dillard sued Harold Brown, Secretary of Defense of the United States, Major General Wilfred Menard Jr., Adjutant General of the New Jersey Army National Guard, Major General Laverne Weber, Adjutant General of the Army National Guard of the United States, the United States, and the State of New Jersey. She sought an injunction staying the effectiveness of her discharge from the National Guard and compensatory damages to the extent that she was not made whole by injunctive relief. Dillard claimed that AR 601-210 "discriminates against women on its face and upon information and belief is applied so as to discriminate against women", App. at 6, and that it infringed her constitutional right of privacy.
 
 
 10
 The district court granted summary judgment in a memorandum opinion and order dated January 10, 1979 against Dillard and in favor of all defendants except Major General Menard and the State of New Jersey. It first stated that since Dillard had already benefited from being classified as an "erroneous" rather than a "fraudulent" enlistee, thereby obtaining an honorable discharge and avoiding prosecution under 18 U.S.C. § 1001[2], she could not be heard to complain that the discharge violated her constitutional rights. The district court then found that:
 
 
 11
 the question sought to be pressed (is) nonjusticiable. The composition of the armed services is a matter within the discretion of the military. Gilligan v. Morgan, 413 U.S. 1 (93 S.Ct. 2440, 37 L.Ed.2d 407) (1973). "(T)he complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army." Orloff v. Willoughby, 345 U.S. 83 (73 S.Ct. 534, 97 L.Ed. 842) (1953). The Army is the best judge of what qualifications are needed in military personnel. Plaintiff has no right to enter the military at all. The Army has decided, for whatever reason, that persons with care of minor children should not be members of the National Guard. The court will not now review that decision.
 
 
 12
 Dillard v. Brown, Civ. 78-691 (D.N.J. January 10, 1979). The district court's holding that Dillard's claim was non-justiciable provided the main basis for its summary judgment order.
 
 
 13
 Dillard appealed from this order, but her appeal was dismissed by this court on November 27, 1979 for lack of appellate jurisdiction, in as much as the judgment entered had not disposed of all claims against all the defendants. Thereafter, in an order dated June 18, 1980, the district court dismissed Dillard's complaint against the remaining defendants. By so doing the district court's orders became final and hence appealable. Dillard filed a timely appeal from the June, 1980 order and the earlier 1979 order of the district court, both of which, as we have noted, became final on entry of the June 18, 1980 order. On appeal Dillard's claims are asserted only against the United States, and not against New Jersey.[3]
 
 II.
 A.
 
 14
 The government first argues that Dillard's claims of sex discrimination and privacy are entirely non-justifiable. It is not disputed that this court has subject matter jurisdiction to hear Dillard's claims. Her claims arise under the Constitution of the United States, and jurisdiction exists under 28 U.S.C. § 1331. In deciding whether her claims are justifiable, we must determine whether the separation of powers provided by the Constitution bar our review or whether the claims "presented and the relief sought are of the type which admit of judicial resolution." Powell v. McCormack, 395 U.S. 486, 516-517, 89 S.Ct. 1944, 1961, 23 L.Ed.2d 491 (1969).
 
 
 15
 Citing Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the government asserts that the Constitution expressly commits issues concerning operation of the military to Congress as the legislative branch and to the President (the Executive), and that the Supreme Court has recognized this express commitment. It also briefly argues that there are no judicially discoverable and manageable standards for reviewing Dillard's claim.
 
 
 16
 The government contends that an express commitment to the other branches of the constitutional issues raised by Dillard can be found in Article I, Section 8 and Article II, Section 2 of the Constitution. These provisions, it maintains, do not allow a court to determine those individuals who will make acceptable members of the armed forces. (Government brief at 8.)
 
 
 17
 Article I, Section 8 provides in relevant part that:
 
 
 18
 The Congress shall have Power To ... provide for the common Defence ...
 
 To raise and support Armies, (and)
 
 19
 To make Rules for the Government and Regulation of the land and naval Forces;
 
 
 20
 To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;
 
 
 21
 In pertinent part, Article II, Section 2 reads:
 
 
 22
 The President shall be Commander in Chief of the Army and Navy of the United States,
 
 
 23
 These constitutional provisions unquestionably reveal that the operation of the military is vested in Congress and the Executive. It is not for a court to establish the criteria governing the composition of the armed forces. Yet these sections of the Constitution do not provide or intimate that, when statutes or regulations regarding the composition of the military trench upon other constitutional guarantees, the courts are powerless to act. Neither section, expressly or by implication, prevents a federal court from entertaining an appropriate constitutional claim brought against the military. The military has not been exempted from constitutional provisions that protect the rights of individuals, even though the rights of those in the armed forces may differ from those of civilians. Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), Raderman v. Kaine, 411 F.2d 1102 (2d Cir. 1969). It is the role of the courts, not the military, to define these rights.
 
 
 24
 The government does not refer to any constitutional history that would indicate that constitutional claims involving the composition of the military are textually committed to Congress and the Executive. Instead, it refers to two Supreme Court cases, Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) and Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), which it claims support this proposition. However, neither of these cases hold that constitutional questions affecting military decisions or the composition of the armed forces are necessarily and exclusively committed to the other coordinate branches of the government.
 
 
 25
 Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) stemmed from the Kent State University shootings. The plaintiffs, students at Kent State, claimed that the Ohio National Guard had "a pattern of training, weaponry and orders" which made "inevitable the use of fatal force in suppressing civilian disorders when the total circumstances ... (were) such that non-lethal force would suffice to restore order ..." Id. at 4, 93 S.Ct. at 2442. Relying on the due process clause they sought "continuing regulatory jurisdiction" over the activities of the Guard in a federal court. Id. at 5. The Court found that the activities of the Ohio National Guard, which were attacked by the plaintiffs, were beyond judicial review since "the relief sought ... requiring initial judicial review and continuing surveillance by a federal court over the training, weaponry, and orders of the Guard, would ... embrace critical areas of responsibility vested by the Constitution in the Legislative and Executive Branches of the Government." Id. at 7, 93 S.Ct. at 2444 (footnote omitted). In this regard the Court wrote:
 
 
 26
 It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible as the Judicial Branch is not to the electoral process. Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches. The ultimate responsibility for these decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability. It is this power of oversight and control of military force by elected representatives and officials which underlies our entire constitutional system; the majority opinion of the Court of Appeals failed to give appropriate weight to this separation of powers.
 
 
 27
 Id. at 10-11, 93 S.Ct. at 2445-2446 (footnote omitted).
 
 
 28
 Gilligan, however, did not immunize the armed forces from all judicial scrutiny. Chief Justice Burger, speaking for the Court, stated that:
 
 
 29
 (i)t should be clear that we neither hold nor imply that the conduct of the National Guard is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law or for specific unlawful conduct by military personnel, whether by way of damages or injunctive relief. We hold only that no such questions are presented in this case.
 
 
 30
 Id. at 11-12, 93 S.Ct. at 2446 (footnote omitted).
 
 
 31
 Thus, Gilligan does not stand for the proposition that issues concerning the operation of the National Guard are necessarily committed to the coordinate political branches. The Supreme Court held only that a federal court could not exercise continuing regulatory jurisdiction over the National Guard. The plaintiffs in Gilligan were not merely seeking to have the Court hold that certain practices or regulations were unconstitutional. Rather they sought to vest virtual control of the Ohio National Guard in a federal court. This transfer of control, Gilligan held, could not be done.
 
 
 32
 Here, however, Dillard has complained that her constitutional rights have been violated by a specific military regulation and its application. Her challenge, unlike that of the plaintiffs in Gilligan, does not require a court to engage in an ongoing supervision of the National Guard. A court by considering Dillard's claims is not usurping the responsibility constitutionally committed to a coordinate branch. Nor is the court here asked to engage in a task for which it has no competence. Dillard merely seeks constitutional review of a regulation by a federal court, a task which traditionally and constitutionally has been committed to such a forum. The claims "presented and the relief sought are of the type which admit of judicial resolution." Powell v. McCormack, supra, 395 U.S. at 516-17, 89 S.Ct. at 1961. Consequently in Dillard's case there is present neither the level of intrusion into the responsibilities of the coordinate political branches nor the lack of competence of the judicial branch that was found in Gilligan. The claims now raised by Dillard are the very claims that Gilligan excepted and did not intend to bar.
 
 
 33
 In Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), the plaintiff, a licensed physician, was inducted into the military under a doctor's draft law, but, unlike other doctors drafted, he was refused a commission as an officer. The Army denied Orloff a commission because he refused to divulge whether he had been or was associated with various designated "subversive" organizations. Instead, Orloff was classified as a medical technician. In a habeas corpus petition, Orloff raised three claims: (1) under the statute providing for the drafting of doctors, the Army was required to award him a commission; (2) the Army was unconstitutionally punishing him for exercising his fifth amendment privilege against self-incrimination; and (3) the Army had treated him in a discriminatory and unfair manner.
 
 
 34
 The Court considered Orloff's constitutional and statutory challenges on the merits, and rejected them. Having found no constitutional or statutory violation, the Court declined to review the third claim made by Orloff: that the Army had been discriminatory and unfair in its treatment of him. In discussing this third, non-constitutional, non-statutory issue, the Court wrote:
 
 
 35
 We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate army matters as the Army must be scrupulous not to intervene in judicial matters.
 
 
 36
 Orloff v. Willoughby, 345 U.S. 83, 93-94, 73 S.Ct. 534, 539-540, 97 L.Ed. 842 (1953).
 
 
 37
 Thus, Orloff teaches no more than that the exercise of military discretion involving duty assignments will not be reviewed by a court if there has been no statutory or constitutional violation. See Mindes v. Seaman, 453 F.2d 197, 199 (5th Cir. 1971). Indeed, Orloff stands for the proposition that a constitutional challenge brought against the military, which does not require a court to run the military, is justiciable.
 
 
 38
 Neither Gilligan nor Orloff support the government's argument and the district court's holding that Dillard's claims are not justiciable. Nor has the government persuaded us that the resolution of claims such as those made by Dillard are wholly committed by the Constitution to the Legislature and to the Executive.
 
 B.
 
 39
 Although the government's primary argument is that Gilligan and Orloff without more require a court to deny justiciability to Dillard's claims, the government has recognized that recent cases have diluted the justiciability standard it initially espouses. In advocating, as a fallback position, that this court follow the lead of the Fifth Circuit, the government, at least to this extent, has receded from its virtually absolutist position.
 
 
 40
 The Fifth Circuit in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), formulated a four-prong test to determine the justiciability of military related challenges. Air Force Captain Mindes claimed that he had received an erroneous and adverse Officer Effectiveness Report. This report resulted in Mindes's separation from active duty and assignment to reserve status, and he sought to have the report voided. After failing to obtain relief through intraservice procedural reviews, Mindes filed a complaint in district court seeking declaratory and injunctive relief. The district court dismissed the complaint for lack of subject matter jurisdiction.
 
 
 41
 In reversing the district court, the Fifth Circuit first held that there was subject matter jurisdiction. Next, the court noted that military affairs were not automatically non-reviewable.[4] Before a court could review internal military affairs, there had to be "(a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." Id. at 201.
 
 
 42
 Both Mindes and Dillard alleged constitutional deprivations. Mindes had exhausted all military review. In Dillard's case the government has not claimed that Dillard failed to exhaust any military remedies that may have been available. Accordingly, in analyzing the Mindes standard we have no occasion to address this aspect as it pertains to Dillard.
 
 
 43
 The alleged constitutional violations under Mindes were examined by that court in light of four factors:
 
 
 44
 1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values compare haircut regulation questions to those arising in court-martial situations which raise issues of personal liberty. An obviously tenuous claim of any sort must be weighted in favor of declining review.
 
 
 45
 2. The potential injury to the plaintiff if review is refused.
 
 
 46
 3. The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.
 
 
 47
 4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions.
 
 
 48
 Id. at 201-02. The court in Mindes, having established the factors by which the justiciability of claims brought against the military was to be determined, then remanded the case to the district court for an appropriate weighing of these factors.
 
 
 49
 The Mindes approach was employed in three challenges to the same regulation that we now consider: West v. Brown, 558 F.2d 757 (5th Cir. 1977), cert. denied 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978); Henson v. Alexander, 478 F.Supp. 1055 (W.D.Ark.1979) and Lindenau v. Alexander, Docket No. Civ. 79-534C (D.N.C.1979). In all three cases, the court found the claims non-justiciable. We decline, however, to adopt the Mindes test.
 
 
 50
 The difficulty which we perceive with the Mindes analysis is that it intertwines the concept of justiciability with the standards to be applied to the merits of the case. As we have pointed out, the Supreme Court in both Gilligan and Orloff has established the basic parameters for determining the justiciability of challenges brought against the military. Once a claim falls within these parameters, a court should review the claim on the merits. Even if such a constitutional challenge appears weak or frivolous, jurisprudentially that claim should be rejected on the merits, rather than deemed to be non-justiciable by a federal court. We prefer an analysis which does not mingle concepts of justiciability with those affecting the merits of the claim to the extent that Mindes requires. Thus, we decline to adopt the Fifth Circuit's formula.
 
 C.
 
 51
 We do not dispute that military justifications must be taken into account when ruling on suits that have been brought against the military. The rights enjoyed by those in the military community do not correspond identically to those enjoyed by civilians. See, e. g., Parker v. Levy, supra, 417 U.S. at 758-59, 94 S.Ct. at 2562-2563. Each constitutional claim must be evaluated in relation to the specific military justification alleged. See Crawford v. Cushman, 531 F.2d 1114, 1121 (2d Cir. 1976). If the military justification outweighs the infringement of the plaintiff's individual freedom, we may hold for the military on the merits, but we will not find the claim to be non-justiciable and therefore not cognizable by a court.
 
 
 52
 We thus hold Dillard's claims to be justiciable.
 
 III.
 
 53
 The district court granted the government's motion for summary judgment largely, if not entirely, because it found Dillard's claim not to be justiciable. The merits of Dillard's claims were therefore never reached by the district court. We, of course, can affirm the district court if another appropriate ground appears, on which to do so. See, e. g., PAAC v. Rizzo, 502 F.2d 306, 308 n.1 (3d Cir. 1974), cert. denied 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). The summary judgment record in this case, however, is far too murky to enable us to make this determination.
 
 
 54
 We take particular note of Dillard's bare allegation that the government applied AR 601-210 in a discriminatory fashion against single women. If this claim could be substantiated, there would be little doubt that Dillard would be entitled to relief. The government argues that it has met its burden of establishing the absence of a genuine issue of material fact, see generally, Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), by its production of General Williams's affidavit. It thus maintains that summary judgment is appropriate because the plaintiff cannot rest upon the conclusory allegations of her complaint.[5] Fed.R.Civ.P. 56(e); Tunnell v. Wiley, 514 F.2d 971 (3d Cir. 1975).
 
 
 55
 We cannot accept the government's argument for two reasons. First, we cannot tell whether General Williams's affidavit is part of the record in this case. See note 1, supra. The district court docket sheet does not mention it and a review of the record does not reveal the proceeding in which it was filed, if indeed it was filed. Second, General Williams's affidavit never expressly denies that AR 601-210 was applied in a discriminatory fashion. Hence, at this point, the government has yet to establish that no genuine issue of material fact exists with regard to the claim of discriminatory application,[6] and thus we cannot affirm the district court's grant of summary judgment. Our reversal of the district court, however, is without prejudice to any future motions, including a motion for summary judgment, which the government might make on an appropriate record.
 
 IV.
 
 56
 We hold Dillard's challenge to the Army Regulation prohibiting the enlistment of a single parent with a dependent child to be justiciable. The granting of summary judgment on this ground and on the present record by the district court was therefore in error. We will therefore reverse the district court's order of June 18, 1980 and remand to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Jack Richard Miller, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation
 
 
 [1]
 In an affidavit of General Williams to which the parties refer, General Williams stated:
 During the period July 73 July 74, there was a significant increase in the enlistment of single applicants with minor children. Also, during this period, sole parents presented many problems in other personnel management areas. These soldiers were unable, many times, to perform during normal duty hours because of the requirement to care for the children; some were not available for extra duty requirements in the evening, weekend, and other odd duty-hour requirements. Special considerations were required during extended and unannounced training exercises, to avoid the children suffering from lack of proper care and supervision. Overall, this category of soldiers was requiring an inordinate amount of management time and presented morale problems because of the inconsistency in unit policies regarding duty and other requirements. Of paramount importance, this category of soldiers was not providing the assignment flexibility required to manage a military force on a worldwide basis and caused inequities in the Army assignment policies.
 During the period July 73 July 74, the problems associated with single applicants with minor children were highlighted. Even though enlistees had made arrangements for the care of the children prior to their enlistment, these arrangements, many times, were temporary and did not relieve them from the care of the children. Consequently, soldiers were arriving at their first duty stations not prepared to provide the proper care and supervision of the children and perform their military duties. This situation created morale problems within the units.
 Therefore, the army implemented a policy on 15 July 1974 that precluded the enlistment of single applicants with dependents under 18 years of age. This policy has proved to be in the best interest of the Army and provides an equitable policy for all applicants.
 The affidavit from which we have quoted appears in the appendix to appellee's brief. We cannot determine for what purpose that affidavit was filed, nor can we determine the particular proceeding in which it was filed. Neither the docket entries nor the motion papers filed in support of the cross motions for summary judgment reveal this affidavit as having been filed in connection with such proceedings.
 
 
 [2]
 18 U.S.C. § 1001 (1976) provides:
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 [3]
 Apparently the district court dismissed Dillard's claims against the New Jersey defendants because their liability was predicated solely upon principles of respondeat superior and no personal involvement with Dillard was alleged. Because Dillard has not raised any issue on this appeal respecting the dismissal of the New Jersey defendants, we do not review their dismissal
 
 
 [4]
 A fair reading of Mindes indicates that the terms reviewable and justiciable were used interchangeably. We discern no difference in the meanings of these terms in the present context
 
 
 [5]
 We note that Dillard's complaint, which alleged a discriminatory application of the regulation, was verified
 
 
 [6]
 On this record it does not appear that any genuine issues of material fact exist with respect to Dillard's claims that AR 601-210 is facially unconstitutional and that the regulation invades her constitutional right of privacy. While we have serious doubts as to the merits of these claims, it appears to us that in view of our remand which is required on the claim that the military applied AR 601-210 in a discriminatory fashion, it is appropriate to remand the entire proceeding to the district court for it to consider, for the first time, all of Dillard's claims